———o o o———

Asahel S. Levy and David S. Coddington, acting executors &c. of Uriah P. Levy, deceased, *vs.* Virginia Levy and others.

A testator, by his will, executed in the city of New York, after giving legacies and bequests to various persons, devised and bequeathed his farm at Monticello, in Virginia, together with all the rest and residue of his estate, real, personal or mixed, not thereby disposed of, wherever or however situated "to the people of the United States or such persons as congress shall appoint to receive it," for the purpose of establishing at said farm at Monticello, an agricultural school; and should congress refuse to accept of said bequest, or refuse to take the necessary steps to carry out the testator's intention, he devised and bequeathed said property "to the people

of the state of Virginia, instead of the people of the United States;" provided they should by acts of their legislature accept it, &c. And should the people of Virginia, by the neglect of their legislature, decline to accept the bequest, then the property was devised and bequeathed to certain religious societies.

1. That the devise and bequest in trust of the Monticello farm and of all the residue of the testator's estate, to the people of the United States, did not, and could not, take effect, and was void. MULLIN, J. dissented.

2. That such devise to the people of the United States should be considered as a devise to the government of the United States.

3. That such devise to the government of the United States, if the government could take under it, should be deemed a *present* devise on *condition* that congress shall take certain action.

4. That the subsequent devise and bequest of the same property to the people of the state of Virginia was valid, and the government of Virginia had capacity to take as a body politic, notwithstanding its political condition or relation to the government of the United States; and that such devise must be deemed to have taken effect on the death of the testator, subject, however, to be defeated by the want of subsequent action by the legislature of Virginia.

5. That our statute prohibiting corporations from taking by devise, unless expressly authorized by their charters, or by statute, was not intended to apply either to the general or the state governments, and does not prevent the government of the United States taking under the devise.

6. That the government of the United States is an artificial being, or body politic, capable of taking by grant or devise, for its own benefit, or the benefit of the people of the United States.

7. That it might also take under a devise in trust for a charity to be administered or carried on in the District of Columbia, and that congress might provide by law for the administering of such charity there. But that it could not take under a devise in trust for a charity to be administered or carried on in the state of Virginia, either for its own benefit, or for the benefit of the people of the United States.

8. That the government of the United States could not accept the devise, and had no power to act under it; and therefore that the devise to the government of the United States was void. MULLIN, J. dissented.

9. That such devises to the governments of the United States and of Virginia were not within the act of the legislature, of April 13, 1860, which declares that "no person having a husband, wife, child or parent shall, by his or her last will or testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one half part of his or her estate, after," &c.

The testator also directed his executors "to invest the funds arising from said estate, in some safe paying stocks, as fast as they accumulate, and

Levy *v.* Levy.

*to hold the whole of the property* and estate hereby devised and bequeathed for said school and in their hands, *until* the proper steps have been taken by congress, or by the legislature of Virginia, or the said Hebrew Benevolent congregations, to receive the same, and discharge said executors." *Held* that the accumulation of the funds or income, authorized by this provision of the will, was void.

APPEAL by the plaintiffs from parts of a judgment rendered at a special term, after a trial at the New York circuit, before Justice ALLEN. The action was brought by the acting executors and trustees of Uriah P. Levy, deceased, to obtain a judicial construction of such parts of his last will and testament as were set forth in the complaint. The justice before whom the action was tried found and decided, as conclusions of fact; that the following material facts and circumstances stated in the complaint were true, to. wit: That Uriah P. Levy, late a captain in the United States navy, died in the city of New York, on the 22d day of March, 1862, leaving his widow, the said Virginia Levy, and the following persons his only surviving next of kin and heirs at law, viz: Amelia Levy and Eliza Levy, formerly Eliza Hendricks, sisters of the said Uriah P. Levy, Joseph M. Levy, Isaac M. Levy and Jonas P. Levy, brothers of the said Uriah P. Levy, George Washington Lopes and Abigail Peixotto, (wife of David C. Peixotto,) children of Fanny Lopes, a deceased sister of the said Uriah P. Levy, Morton Phillips, Rachel Murphy, wife of John Murphy, Mary Ann Scooler, wife of Maurice Scooler, Fanny Liebschutz, wife of Felix Liebschutz, Benjamin Levy, Uriah P. Levy and Amelia P. Levy, children of Morton P. Levy, a deceased brother of the said Uriah P. Levy. That the infant defendant Uriah P. Levy had, since the commencement of this action, come of age. That said city was the place of residence of the testator at the time of his death, and for a long time prior thereto. That said Uriah P. Levy, deceased, left a last will and testament, by which he nominated these plaintiffs, with several others, as executors of his said will.

That on the 9th day of June, 1862, said will was duly admitted to probate by the surrogate of the city and county of New York, and that on the 12th day of June, 1862, the plaintiffs were duly qualified to act as executors of said will by the surrogate of the city and county of New York, said surrogate having sole jurisdiction of said matter, and letters testamentary were by said surrogate duly issued to them only, the other persons named as executors neglecting or refusing to act. And the plaintiffs are now the sole executors of said will. That said Uriah P. Levy, deceased, was possessed of a very large amount of real estate in the city of New York and in the state of Virginia; and also of a large amount of personal property. That the value of the real estate in the city of New York is over $200,000, and the personal estate in the city of New York was inventoried at $131,606.15. That at the time of his death, the said Uriah P. Levy owned a farm at Monticello, formerly the residence of President Jefferson, and also a tract of about fifteen hundred acres near by, beside personal property at Monticello, and on the Washington farm, consisting of farming implements, cattle, negroes, &c. That said real estate and personal property are of great but uncertain value. That said Uriah P. Levy, by his said will, devised and bequeathed the larger portion of said real and personal estate and property, in the following words, viz: "After paying the above legacies and bequests or investing for the same and subject to my wife's dower and use of furniture, I give, devise and bequeath my farm and estate at Monticello in Virginia, formerly belonging to President Thomas Jefferson together with all the rest and residue of my estate real, personal or mixed not hereby disposed of, wherever or however situated, to the people of the United States, or such persons as congress shall appoint to receive it, and especially all my real estate in the city of New York in trust for the sole and only purpose of establishing and maintaining at said farm of Monticello in Virginia an agricultural school

for the purpose of educating as practical farmers children of the warrant officers of the United States navy whose fathers are dead, said children are to be educated in a plain way in the ordinary elementary branches to fit them for agricultural life and to be supported entirely by this fund from the age of twelve to sixteen and each of them to be brought up to do all the usual work done on a farm; the said farm to be so cultivated by the said boys and their instructors as to raise all they may require to feed themselves and the schoolmaster and one other teacher and one superintendent of the said farm. I also give and bequeath for the purpose of giving such fuel and fencing for said Monticello farm school two hundred acres of wood land of my Washington Farm called the Bank Farm in Virginia the said two hundred acres to be taken off from said Farm hereby devised to my nephew Ashel and to be designated by said Ashel.

"In establishing said farm-school I especially require that no professorships be established in said school or professors employed in the institution, my intention in establishing this school is charity and usefulness and not for the purpose of pomp. In proportion to the smallness in number of the teachers so will industry prevail. The institution must be kept within the revenue derived from this endowment, and under no circumstances can any part of the real or personal estate hereby devised be disposed of, but the rent and income of all said estate real and personal is to be held forever inviolate for the purpose of sustaining this institution. The estate and lands in New York can be leased to great advantage for that purpose.

"Should the congress of the United States refuse to accept of this bequest or refuse to take the necessary steps to carry out this intention I then devise and bequeath all the property hereby devised, to the People of the State of Virginia instead of the People of the United States, Provided they by acts of their Legislature accept it and carry it out as herein directed. And should the People of Virginia, by the neglect of their

Legislature, decline to accept this said bequest I then devise and bequeath all of my said property to the Portuguese Hebrew Congregation of the City of New York whose Synagogue is in Crosby Street New York and the Old Portuguese Hebrew Congregation whose Synagogue is in Cherry Street Philadelphia and the Portuguese Hebrew Congregation of Richmond Virginia   Provided they procure the necessary legislation to entitle them to hold said estate and to establish an Agricultural School at said Monticello for the children of said Societies who are between the ages of twelve and sixteen years and whose fathers are dead and also similar children of any other denomination hebrew or christian.

"In order to enable said Hebrew Congregations to hold said estate and carry on said farm school a charter will probably have to be obtained upon the application of said Congregations to the Legislatures of Virginia and New York.

"Should the fund arising from said estate be more than sufficient to support and educate the said children of warrant officers of the United States Navy the directors of said school are then next to select children of Sergeant Majors of the United States Army as the beneficiaries, and if a surplus is still remaining they are then to select from children of Seamen in the United States Navy whose fathers are dead.

"Item.   I direct my Executors hereinafter named or such of them as shall qualify to invest the funds arising from said estate in some safe paying stocks as fast as they accumulate, and to hold the whole of the property and estate hereby devised and bequeathed for said school and in their hands until the proper steps have been taken by Congress or the Legislature of Virginia or the said Hebrew Benevolent Congregations to receive the same and discharge said Executors.

"Lastly.   I appoint the Honorable Benjamin F. Butler, David V. S. Coddington, Ashel S. Levy, Esqr and Joseph H. Patten Esqr Counsellor at Law in the City of New York, Doctor Joshua Cohen, and Jacob I Cohen his brother, of Baltimore, George Carr Esquire, Attorney at Law Char-

lottesville Virginia, and Doctor John B. Blake of Washington City, Executors of this my said Will and Testament and Trustees of said Estate, and in case of the death of either of my Executors or Trustees or their relinquishment or inability to act, I direct that the remaining qualified Executors or Trustees act without them."

That said will contains, also, the following provisions, viz:

"I give and bequeath to the Jewish Hospital of the Portugese Jewish Society in New York, my valuable painting of 'The Children of Israel collecting Manna in the Desert, by Murcelle.'"

"I further give and bequeath to the Portuguese Hebrew Hospital of the City of New York, whose Synagogue is in Crosby Street, the sum of one thousand dollars, to be paid them by my Executors."

That there are no Hebrew congregations bearing corporate names such as they are designated by in said will; and that there is not, and was not at the time of executing said will, a Jewish hospital known as "The Jewish Hospital of the Portuguese Jewish Society in New York," as designated in said will; and that there is not, and was not at the time of executing said will, a hospital known as "The Portuguese Hebrew Hospital of the City of New York," whose synagogue is in Crosby street, as designated in said will. But there is a Portuguese Hebrew congregation whose corporate name is "Shearith Israel," whose synagogue, at the time of executing said will, was in Crosby street, in the city of New York; and there was at said time, and now is, a Portuguese Hebrew congregation, the corporate name of which is "Mikveh Israel," whose synagogue was in Cherry street, in the city of Philadelphia; and there was at the time of executing said will, and now is, a Portuguese Hebrew congregation in Richmond, Virginia, whose name is Beth Shalome; and there was at the time of executing said will, and now is, in the city of New York, a Jewish hospital whose corporate name is the "Jews' Hospital," in New York,

which was incorporated the 15th day of January, 1852, and was intended by the testator under the names of the "Jewish Hospital of the Portuguese Jewish Society in New York," and the "Portuguese Hebrew Hospital of the City of New York, whose Synagogue is in Crosby Street;" and that the gifts and bequests to the last mentioned hospitals by name, were intended for the said Jews' hospital. That by the law of Virginia, the said devise of the real estate in Virginia is void. That the intent of the testator in relation to the trusts attempted to be created cannot be carried out.

And the justice found as conclusions of law:

1. That the gifts and bequests of a painting and of one thousand dollars, intended for the Jews' hospital in New York, were valid gifts to said Jews' hospital, and should be paid and delivered to it.

2. That the devise and bequest of the "rest and residue of the estate, real, personal or mixed," of the testator to the people of the United States, or such persons as congress shall appoint to receive it, and provisionally and in succession to the people of the state of Virginia and certain Hebrew congregations named, upon the trusts specified in the will, were void.

3. That that portion of the estate of the testator attempted to be disposed of by the will as the "rest and residue," and upon the trusts referred to, upon the death of the testator, descended to and vested in his widow, heirs at law, and next of kin, entitled under the statutes of descent and distribution of this state, the executors taking no estate or interest therein.

4. That the devise of the Monticello estate and farm, and the two hundred acres of land, in the same clause, also failed.

Judgment was entered in accordance with these findings.

*Jos. H. Patten,* for the appellants. 1. The devisees and legatees of the Monticello mansion and farm, with the residuary property, are accurately and precisely described in the

Levy *v.* Levy.

will, so there is *no uncertainty* as to them. The children hereinbefore described are the actual and real residuary devisees and legatees of the property. The United States, (and so also the state of Virginia, and the Hebrew congregations, on contingencies,) are merely their temporary guardians and agents; because, as a class, they are fluctuating, while the agency is permanent; the river is constantly running by, but the jurisdiction over it is lasting.

2. The devise to the PEOPLE of the United States is perfectly *valid ;* and they have the *power* and *right* to take the fee of the real estate, and the possession of the personal property. A devise by will is the same in effect as a conveyance by deed; the one is the conveyance of a *living* man; the other of a *dying* man; and the effect of the instrument in each case is the same. If Commodore Levy, in his lifetime, had made a *deed* of all his real estate to the people of the United States, giving and granting to them, for a consideration, this estate, the fee simple of the property would have been divested from him and his heirs the moment he signed, sealed and delivered the deed, and could never be reinvested in the grantor, unless by a similar transfer, or legislative act equivalent to such a transfer; so, as soon as this will was probated, the title of the people of the United States was perfect. *No conditions precedent* were annexed to the devise. But the transfer was absolute. The people may yet refuse to accept the devise, or neglect or refuse to act, as any other donee may elect to do. But until they do so, the property, both real and personal, is absolutely vested in them; and no party can set up any claim to any part of this property, until they establish as a *fact*, that the people of the United States have *refused* the gift; or that, on proper application to them, they have *declined to act.* So far from this being the case, the last act of the present 37th congress of the United States, was to pass a joint resolution of the senate and house of representatives, "That it be referred to the attorney general of the United States to examine into

this matter, and report upon the whole case." There is no ground even for a conjecture, to say nothing of a probability, that congress will ever decline the gift. The *people have the power* to take the property for the purposes intended and designated in the will. The people of the United States are the *supreme* rulers of the land; and all their acts, done by their congress, are the *supreme law* of the land; and when they pass any act either to carry out the testator's intentions, or refusing to do so, every other tribunal must bow to its authority.

3. The people of the United States have already accepted a similar gift, and are carrying out the wishes of the testator, with the cordial co-operation of the legislative, executive and judicial departments of the government, in the case of the Smithsonian bequest. The chief justice of the United States, the attorney general, and many other of the ablest and most learned American lawyers, are trustees of the Institute established and supported by a bequest and devise similar to Commodore Levy's. And before its organization, the whole subject was very fully considered and discussed in both the senate and house of representatives, and the *bequest was accepted* with great unanimity. This acceptance, and subsequent acts of approval by all the departments of the government, *set at rest* and dissipate every cavil, as to the *right* of the people to be the devisees of any property which any person may see fit to give them, by will. (*See Benton's Cong. Debates, vol.*)

4. That the United States have the *power to hold property* by purchase, (or by *devise*, which is the same in *effect*,) is evident from the vast amount of property which they now hold by purchase and gift in every state in the union, the numerous custom houses, the sub-treasury, and most of the light houses, the mints, and forts, navy yards, hospitals, &c. in these states, which the United States have purchased of individuals, and taken the ordinary conveyances. Jurisdiction, it is true, is supposed not to be acquired over these

Levy *v*. Levy.

places (I think erroneously) without an act of the legislature of the individual state ceding jurisdiction. But he must be a bold lawyer who would say the United States do not *own* these places so purchased and conveyed. An act of the legislature of a state is not necessary to enable them to take and hold all this property; and the sanctions sometimes embodied in the act ceding jurisdiction, are entirely unnecessary to pass the title.

5. The court will take special notice that the words of the devise are *absolute*. "I give to the people of the United States." The mere *gift* is completed, with no condition precedent; and the title and right to all the property vests in "the people of the United States," until they choose to relinquish it. This gift is authorized by the statute of this state, which declares, that every citizen of the United States is capable of holding lands in this state, and of taking the same by descent, devise, or purchase. (3 *R. S. p.* 3, § 9.) If *one* citizen can take by devise, certainly *all* can take. And if the devise would be *good* made to *one* citizen, it certainly is *not void* because made to *ten ;* or to ten millions.

6. This gift does not conflict with any of our statutes preventing the *accumulation of estates* or property; statutes which have been so carefully enacted in almost every state in the union. The sole object of all these statutes is to preserve the policy of our republican form of government, and to prevent a moneyed or landed aristocracy, by abolishing entailed estates, and forbidding to tie up the income of personal property. All these, and similar enactments, have nothing to do with this case. (1 *R. S. p.* 723, §§ 14, 15. 3 *Barb.* 244. 5 *id.* 101.) For it was the sole and simple object of each and all of these acts, to prevent any citizen of this state from ennobling his family, or some individual, by giving only the income of his property from generation to generation. These acts, being intended only to prevent this mischief, have no application to such a benevolent and patriotic devise as the one now under examination.

7. Neither is this devise in conflict with our statute of *uses and trusts*, but is expressly authorized by it; for by 1 R. S. p. 727, §§ 47, 48, "Every person who, by ·devise, shall be entitled to the actual possession of lands, and the rents and profits, shall be deemed to have a legal estate therein;" and by said 48th section, "The last preceding section shall not divest the estate of any trustee where his title is not merely nominal, but is connected with some *management* in relation to the *lands* which are the subject of' the trust." Here the United States are entitled to the actual possession of the estate, and "are deemed to have a legal estate therein;" their title as trustees is not "merely nominal," but is "actual, and is connected with the *management* of the estate, which is the subject of the trust. (4 *Paige,* 352. 4 *Denio,* 390. 7 *Paige,* 182, 187.) And by § 79, (*see* 1 *R. S. p.* 720,) "Every express trust, valid as such in its creation, shall vest the whole estate in the trustees, in law and in equity, subject only to the execution of the trust." (2 *Seld.* 567. 3 *Sandford,* 531.) By this section, the object of this devise is authorized and declared. And still further, by this section the *cestuis que trust* are authorized "to *enforce the performance* of this trust."

8. This devise is *good* to the United States. And the beneficiaries, the orphan children of warrant officers of the United States navy, can come into our courts and *enforce* the performance of the trust.

9. A legally constituted corporation in another state can purchase and hold land *ad libitum* in the state of New York. (*See* 2 *Kent's Com.* 283, 284.) If corporations can take and hold real and personal estate unlimited as to its duration, the *people* of the United States *can take;* and the act restraining the accumulation, and power of alienation, for more than two lives, is shown not to be applicable to this case.

10. There is no *indefiniteness* as to the devisees, *viz :* "The PEOPLE of the United States." They are represented by their congress. If this devise to them is *void for indefinite-*

Levy *v.* Levy.

*ness,* then the constitution of the United States is void for the same cause; for its first words are, "We, the people of the United States, do ordain and establish this constitution;" and the bequest to the Smithsonian Institute is also void, for that bequest is "to the people of the United States." And all the deeds of property purchased by them, and deeded "to the people of the United States," are also void therefor. (1 *R. S. 5th ed. p.* 84. *Sovereignty and Jurisdiction of the State.*)

11. But the *real bequest* of all the residuary property is to the *half-orphan children* of the warrant officers in the United States navy. There is no *indefiniteness* as to them. Warrant officers are absolutely necessary on board of every ship of war; they are boatswains, gunners, sailmakers and carpenters. They are appointed by the president of the United States, by a warrant signed by himself, and the warrant sealed with the seal of the navy department. The only difference between them and *commissioned* officers being, that the latter are nominated by the president to the senate, and their nomination, after due deliberation, confirmed by the senate. Both classes of these officers are equally *definite.* The warrant officers are few in number; and the children entitled to the benefit of this gift are equally *definite.* If it could be shown that there *are* not any such children, and that there *never will be* any such children, then the devise would be void, as a *lapsed legacy.* But this cannot be pretended.

12. The will is perfect in its *form* of execution; for it has been duly probated.

13. The people of the United States are entitled to take and hold as *devisees* — not only on principle, as the supreme power of the land — but also under our statute, (1 *R. S. p.* 719, *art.* 2, § 8,) giving the right to all citizens. The ultimate *beneficiaries* themselves are *not indefinite.* No selection or judgment by the trustees is required or allowed to be used with regard to them. They have no discretion in the matter.

They are merely to ascertain, by reliable evidence, the facts which entitle an applicant to share in the benefits of the will, *viz:* the father's being, or having been, at the birth of the child, a warrant officer, and his death, and the age of the child seeking admission.

14. No argument can be raised as to the devise being void, on the ground that the United States *may not* see fit to take the trust. If such ground were sufficient, every devise and bequest in the will would be void; for the legatees *may not* take their respective legacies. When any or all of them shall have refused or declined their several legacies, then, and then only, will such legacies revert to the heirs. Even the executors themselves would be disqualified, for "they may not take." In fact, but two out of the seven who were appointed executors have assumed the responsibility. But a fuller answer to any such objection is, that the United States *have* appeared and put in their answer in this case, deliberately making themselves parties to a construction of this will in their favor. And the last joint act of the late congress was to direct the attorney general of the United States to attend to this devise. This devise is good, unless our statute and all the fundamental principles that govern the construction of wills are overthrown.

15. A leading fundamental principle in the construction of wills is, that the *intention* of the testator must be carried out, if it can be discovered, and it contravenes no rule of law. From the whole tenor of the will it is impossible to deny that the testator's sole object was to provide for and educate the half-orphan children of warrant officers of the navy, between 12 and 16 years of age. These are his *first* and the *sole* object and beneficiaries of this fund. The United States are merely the *guardians* of these children, and the trustees of their fund. They have not a dollar's worth of interest in the estate. It is a TRUST FUND. It could not be given to the orphans, for they had only a shifting and temporary in-

terest in the estate as individuals, but as a *class* they are *permanent.*

16. Even if the United States could not take the trust, the case of the orphans is not hopeless or helpless; for this court has the power to appoint trustees in the place of those who cannot or will not act. If, then, the United States decline to act, this court must carry out the intentions of the testator, by appointing other trustees. And our revised statutes, (*vol.* 1, *p.* 749, § 2,) specially provide, "that in the construction of every instrument authorizing the creation of any estate or *interest in land,* it shall be the *duty of the courts* of justice to *carry into effect the intent* of the parties, so far as the same can be ascertained from the whole instrument, and is consistent with the rules of law." (2 *Kent's Com. p.* 287: "*Courts of chancery have a necessary jurisdiction.*" 5 *Seld.* 175. 1 *Drury & War.* 258. *Incorporated Society* v. *Richards,* 1 *Connor & L.* 58. 25 *Barb.* 81. 1 *R. S.* 731, § 71.)

17. This bequest contravening no rule of law, and the *intention* of the testator being unmistakable, that INTENTION MUST BE CARRIED OUT; even if the *United States* should refuse to take the estate, and decline, by act or resolution of congress, to act as trustees. (1 *R. S.* 731, § 71. 5 *Seld.* 176. 25 *Barb.* 81.) But, if the United States refuse to accept, and will not act as trustees for these orphans, they do not lose their *right* to education and support for the term of four years, inasmuch as the will then gives the trust to the people of the state of Virginia, *provided* they will accept said trust.

18. If, then, the estate, on the death of the commodore, vested in the people of the United States, they must convey it to the people of Virginia by an act of congress, or by an act of relinquishment on their part, and an act of acceptance on the part of Virginia. The law will vest the estate *in trust* in the people of Virginia, under the directions of the will.

19. The people of Virginia are citizens of the United

States, and, as such, can take by deed or devise, under our statute. (1 *R. S.* 719, § 8.)

20. A will cannot be made void because the devisees " *may not*" or " *will not* take," but only because they *cannot* take.·

21. The people of the United States, and the people of Virginia, can take this trust, and carry it out in the fullest manner, by an act of congress, or by an act of the legislature of Virginia; and they can each in the same manner decline to act as trustees.

22. But if the people of the United States refuse to accept this property, and the people of Virginia also decline to take it in trust, then, and in that case, the will offers a more extended charity to a larger class of orphans. The testator directs, by his will, that the property be held by his executors, and to invest the income, and the income be used in the same agricultural school, on the Monticello farm, for the benefit of the half-orphan children of three Hebrew congregations, and similar children of any other denominations, Hebrew or Christian. This property to be held by his executors until the said Hebrew congregations shall have time to procure the necessary legislative acts to enable them to act as trustees for said orphans.

23. The orphans of these two kinds, Hebrew and Christian, now become the *cestuis que trust.*

24. If no such acts shall, within a reasonable time, be applied for by these congregations, then these children can come into court and have trustees appointed to carry out the testator's intentions as found in the will, and thus enable them to reap its benefits.

25. This last devise is not a devise to these societies or congregations, and therefore is not void because made to a corporation not authorized to take it.

26. It is a devise to three Jewish congregations *to receive the rents and profits* of certain property, and to expend it for the benefit of certain half-orphan children, *provided* said congregations apply to the legislature for the necessary pow-

ers. It is no devise to them until they make this application, which, as a matter of course, would be granted; and then are these congregations the devisees, and not till then.

27. Any act of our legislature authorizing them to act as trustees, would be valid. The power of the legislature is unlimited within the constitutions of the state and the United States.

28. It cannot be assumed that the congregations *will not* apply, or that the legislatures will not enact the necessary laws.

29. The devise to these societies or congregations, is precisely the same as it is to the executors, " or such of them as shall qualify." The estate here *waits* for the societies to qualify, as it waited five or six weeks for the executors to qualify. It might as well be alleged, that the *will* is *invalid,* " because the executors might never qualify," as to say it is invalid " because the societies may not qualify;" that is, apply for the necessary legislation.

30. The heirs at law of the testator have no right to any part of this estate devised for the support and education of these children. The *intention* of the testator *must be carried out.* That intention is clearly evident in the will. And it is impossible to deny that his intention was to prevent any of his heirs from having one dollar of his estate, except what he gave to them individually in this will.

31. No construction of law can give to the heirs what. the law declares the commodore had a *right* to decide, and *did decide,* they should not have. To give any part of this devise to them would be giving it to them in the very teeth of his intentions.

32. If the United States will not act as trustees, and if the people of Virginia will not act, then if this devise is to a religious society, (or congregations,) not incorporated, it vests in the people of the state of New York, (1 *R. S.* 729, §§ 72, 74,) and the lands can be conveyed to the parties equitably entitled to them, by direction of the supreme court; that is,

they can convey the lands to trustees, for the benefit of the *cestuis que trust.*

33. All the testator's heirs at law are excluded from sharing in this devise, as shown to be his intention, by his giving several of them by name all that he intended they should have. He has, in this way, *disqualified* them all from taking any *more* of it. All this property was acquired by himself. He left no father, mother, or other collateral relatives.

34. If all his heirs are excluded, and the devise to the orphans is void, the state must take the property, as they possess the original and ultimate property in all the lands in the state. (1 *R. S.* 718, § 1. 3 *id.* 2, § 1, *5th ed.*)

35. Even if the bequest and devise to the people of the United States, or to the people of the state of Virginia, or to the three Hebrew societies, are unauthorized by our laws, still the *equity power* of this court must sustain this devise for the benefit of the orphans. Chancellor Kent says, (2 *Com.* 287,) "The weight of English opinions and argument would be in favor of an original and necessary jurisdiction in chancery, in respect to bequests and devises in trust to persons competent to take for charitable purposes, when the general object of the charity was *specific and certain,* and not contrary to any positive rule of law." The same doctrine was held in the *Orphan Asylum* v. *McCartee,* by Chancellor Jones, that "a devise of lands to executors in trust for a charitable corporation was a legal and valid trust, to be enforced in equity." And this opinion was not overthrown in the court of errors. (*See* 9 *Cowen,* 437.) And Lord Nottingham, in the case of *The Attorney General* v. *Tancred,* says that "devises to corporations, though void under the statute of wills, were good in equity, *if given* to charitable uses." And the uniform decisions in chancery, both before and after the statute of Elizabeth, were "That where the uses were charitable, the court would aid even a defective conveyance." (*Sir James Jekyll,* in *Eyre* v. *Countess of Shaftsbury.* 2 *P. Wms.* 119. 2 *Vern. Rep.* 332. *Lord Eldon, Att'y Gen.* v. *Skinner, Co.*

2 *Russ.* 407. 7 *Paige*, 80. *Att'y Gen.* v. *Middleton*, 2 *Ves.* 327.) Lord Chancellor Sugden, in the *Inc. Society* v. *Rich-ards*, (1 *Conner & Lawson*, 58, *S. C.*, and 1 *Drury & War. Rep.* 258,) reviews and analyzes all the cases, and concludes, that " there was an inherent jurisdiction in chancery, existing before, at, and after, the statute of Elizabeth, sustaining *charitable* devises *though void at law.*". And in 2 Sandf. Chancery Reports, a bequest to an unincorporated society was sustained, where the object was charitable, and no doubt existed as to the designation of the beneficiaries. (*Hornbeck's Ex'r* v. *Am. Bible Society*, 2 *Sandf. Ch.* 133. *Potter* v. *Chapin*, 6 *Paige*, 639–649.) In *Zimmerman* v. *Andres*, (6 *Watts & Serg.* 218,) a devise to an unincorporated society was held to be good. The same doctrine is laid down in *Am. Bible So.* v. *Wetmore*, 17 *Conn. R.* 181.) Same decision in *Inglis.* v. *Sailors' Snug Harbor*, (2 *Peters*, 99 ;) and see all the cases in note, p. 288, 2 Kent's Commentaries, which embodies all the decisions, American and English ; and the chancellor says, that " the great case of *Vidal* v. *Girard's Ex'rs* closes all further discussion and controversy on this subject, and establishes that a corporation has a legal capacity to take real or personal estate *in trust* for charitable uses, in the same manner, and to the same extent as a private person may do. And *the trust may be enforced in equity;* that equity has an inherent equity before the statute of Elizabeth. (2 *Kent's Com.* 288, *note.*) And in *Shotwell,* v. *Mott*, (2 *Sandf. Ch.* 46,) the chancellor takes the same views, and considers the same perfectly settled.

36. The questions that arise in this case affect the rights and jurisdiction of the United States to hold and use devises and bequests, and legislate with regard to occupying or relinquishing the trusts.

37. There is no statute of Virginia prohibiting devises like this. Nor is the devise of Monticello void. But the case of *Gallego* v. *The Attorney General* does *not* decide such devises

---

---

as this to be *invalid.* Nor do any of the cases cited in Mr. Bradford's Point No. 23.

38. Even if the devise of the Monticello farm was invalid, it would not make the other devises and bequests for the orphans invalid. Because it is not essential to the interests of the *cestuis que trust*, that the school should be there. Neither was it the great intention of the testator to make Monticello the chief object of his devise. His grand aim, and most earnest desire, was to benefit the orphan children. Monticello was but one incident towards it. If the legislature should refuse legal provision for such a school at Monticello, that would be no reason why the orphans should not have the rest of the commodore's intentions carried out. Because the state of Virginia wrongs them out of one part of the right, that is no reason why this court should take away the residue of it. If Monticello should burn down, it would not invalidate the devise. If any one forecloses a mortgage on it, or if the state should take it for public purposes, or if a rail road should be laid out through it, the devise would not be invalidated thereby.

39. But if there were any such statute of Virginia, it is not in evidence, and its existence has not been proved in this case.

40. Nor can the courts of this state, by any decision of theirs, make any construction of this will that will have any judicial effect in the state of Virginia. Our courts have no jurisdiction of the question.

41. The courts of the state of Virginia, and of the United States, are the only courts to decide whether the devise of the Monticello farm is valid or invalid.

*Alexander W. Bradford*, for the respondents Joseph M. Levy and others. I. The devise and bequest of the residue of the testator's estate, real and personal, to the people of the United States, or alternatively to the people of the state of Virginia, are void for uncertainty and want of capacity in the donees to take the property and perform the trust.

Levy *v.* Levy.

1. At common law gifts both of real and personal estate by will to uncertain persons are void. The law requires, in all cases, a competent and definite donee on the testator's decease in order to change the course of succession, and exclude or disinherit the heir. 2. The people of the United States, or the people of the state of Virginia as described in this will, mean either all the people living in those jurisdictions at the testator's death, or else the political bodies known by those names, and having, as bodies politic, perpetual succession. (*a.*) If the former, that is, the people as individuals, the persons living when the testator died, the devises and bequests are clearly void. No single individual, nor any number jointly less than all, or a clear majority of all the people then living, including the heirs of those since deceased, can take the property and perform the trust. Such a disposition is manifestly impracticable, impossible and void. (*b.*) If the bequests and devises were intended to be made to the United States and to the state of Virginia, as political bodies, then likewise they are void, because with us the state has no capacity to take by devise as trustee for the management of a charity. 3. By the original rule of the civil law legacies to states and corporations were void for uncertainty. Such still remains the rule of the common law except where altered by statute. 4. But under our form of government, the functions of all departments are definitely limited and arranged; and it is not within the powers of the state or any of its departments to administer a charity. 5. It is manifest, therefore, that the trust imposed by the will cannot be performed, except by some congressional or legislative act, and such act has obviously been intended by the testator, for although the devise to the people of the United States is direct and immediate, it has also been made entirely conditional—namely, it is to the people "or such persons as congress shall appoint to receive it," and "should the congress of the United States refuse to accept it," he says, "I then devise and bequeath all the property," &c. "to the people

of the state of Virginia, instead of the people of the United States, provided they by act of their legislature accept it, and carry it out as herein described. And should the people of Virginia, by the neglect of their legislature, decline to accept the said bequest, I then devise and bequeath all of my said property to the Portuguese Hebrew Congregation," &c. provided they procure the necessary legislation to entitle them to hold said estate," &c.

II. The devise and bequest of the testator's residuary estate to the religious corporations named in the will are void. These congregations are not entitled to take and hold property, whether in trust or otherwise, for any other purposes than those appertaining to the objects for which they were incorporated. 1. They have no power to act as trustees of a fund designed for other purposes, or as managers of an institution to be founded under their direction, for the purpose of carrying out objects · entirely foreign to those contemplated by the law under which they were incorporated. 2. The Hebrew congregation in the city of New York, designated as one of the trustees, was incorporated under the act of 1813, authorizing the creation of religious corporations. (*Laws of* 1813, *ch.* 60, § 3. 3 *R. S.* 2*d ed. p.* 207.) (*a.*) Under said act they can only take property devised "*for their use.*" (*Id.* 208, § 4.) (*b.*) Or "purchase and hold" other property, for their use, "or other pious uses." (*c.*) To "purchase" means to buy and take by grant, and not by devise. (*Downing* v. *Marshall*, 23 *N. Y. Rep.* 366.) (*d.*) Power to purchase confers no authority to take by devise. (*Id.*) (*e.*) But the statute of wills expressly provides that "no devise to a corporation shall be valid, unless such corporation be expressly authorized by its charter, or by statute, to take by devise." (2 *R. S.* 57, § 3.) (*f.*) The only authority given to this congregation by the statute is to take by devise for *their own use*, and, therefore, they cannot take for any *other* use. (*g.*) But the provisions of the general statute which defines and regulates the powers of all corporations

do not authorize corporations to take by devise or bequest, and whilst enumerating the powers which corporations possess, expressly declare they shall not have any other powers than those enumerated, or which are necessary to carry out the same. (1 *R. S.* 602, § 3.) (*h.*) It follows clearly that neither under the statute of 1813, nor under the general law relating to corporations, is there any exemption in favor of this religious corporation from the prohibition contained in the statute of wills, or from the prohibition contained in the statute defining the powers of corporations. 3. As to the religious corporations out of this state, named as trustees in the will, it is manifest: (*a.*) That they cannot have, by comity, a greater or better title to take, than our own domestic corporations. (*Angell & Ames on Corporations*, § 161.) (*b.*) That as they are *artificial* beings created by some sovereign power, they have no absolute rights beyond the jurisdiction of the sovereignty which created them. (*c.*) And consequently have no title, at all, as devisees of land or personalty within this state. (*d.*) For if they could hold property in this state, by virtue of the sovereign power of another state, then the rules which govern the devolution of property here by our law, may be controlled by a foreign power, to the subversion of our own law. (2 *R. S.* 458, § 2.)

III. The devises and bequests to the people of the United States, the people of the state of Virginia, and to the religious societies, mentioned in the testator's will, were intended to be "in trust." 1. By the revised statutes all express trusts of lands are abolished, except those enumerated in the statute. (1 *R. S.* 728, § 53.) 2. The trust directed in this case is not among those enumerated. 3. It cannot be sustained as a power in trust, because it does not authorize the performance of any act lawful under a power, as powers are regulated, defined, and limited by our law. (*Id.* 732, § 58.) It is neither a general nor a special power, under the statute, because it does not contemplate the alienation or disposition of lands. (*Id.* §§ 77, 78.)

IV. Whether the devises and bequests were in trust, or effected a power in trust, they were in contravention and violation of the statute in respect to the alienation of estates. 1. The power of suspending the alienation of estates in land, and the absolute possession of personalty, is expressly limited by statute *upon life*. It cannot be exercised by any other limitation *than upon life*. Any other term of limitation, however short, even one day, is unlawful. 2. In the present case, the period during which the congress of the United States, or the legislature of the state of Virginia, shall signify an acceptance of the trusts attempted to be created by the will; or the period during which the legislatures of the states of New York, Pennsylvania and Virginia, may create corporations to perform such trusts, or authorize the religious corporations in question to perform such trusts, is not defined or limited. (*a.*) In the first place, it is not limited upon life. (*b.*) It is not limited upon any definite period. (*c.*) The legislative power may never be exercised. (*d.*) If it were exercised at any period after the death of the testator, say within a year, and in that case would be valid, it would be valid, if exercised at the termination of one hundred years. (*e.*) The suspension of the estate would therefore, in such case, depend, not upon the statutory limitation, a life or lives in being, but upon the volition of some legislative body, to be exercised at some indefinite time, or perhaps never to be exercised. The estate might thus be suspended forever.

V. The trust intended was, by its own express terms, *a trust in perpetuity*. This is not left to inference and construction, but is so absolutely declared and particularly provided. The testator designed that there should be no doubt or uncertainty on this point. He says in the most explicit manner, that "*under no circumstances* can any part of the real or personal estate hereby devised be disposed of," meaning that the *corpus* or principal of the estate shall never be disposed of, that is to say alienated—"but the rent and income of all said estate, real and personal, is to be held

forever inviolate, for the purpose of sustaining this institution"—the said school. 1. There is, therefore, *no power* of alienation of the estate in question, either during a life or lives in being, or in any other period during all time; but the property is to be locked up in mortmain forever. 2. The trustees of the estate, therefore, whoever they might be, must of necessity, by the terms of the devise, hold all the property in perpetuity, and can never in any manner alienate the same.

VI. The direction to the executors to invest the funds arising from said estate, "as fast as they accumulate," in stocks, and "to hold the whole of the property," until the proper steps shall have been taken "by congress or the legislature of Virginia, or by the said Hebrew Benevolent congregations, to receive the same, and discharge the said executors," is manifestly void, as being in contravention of the statutes of this state in respect to accumulations. No accumulations are valid, except in behalf of minors.

VII. The construction of wills, and the validity of all devises and bequests made by any person domiciled in this state, or relating to lands in this state, are regulated by the *lex domicilii*, or the *lex rei sitiœ*, and not by the law of the state where such provisions are intended to be carried into material effect. (*Bascom* v. *Nicholl's Ex'r, Gen. Term Sup. Ct. June*, 1862.) *First.* As to personal property. (*a.*) The bequest of personal estate in a foreign jurisdiction does not disturb the operation of the rule that the *lex domicilii* governs the disposition of personalty. (*Story on Confl. of Laws*, §§ 38, 101, 479. *Phillimore on Domicil, pp.* 16, 19. *Westlake, Private International Law*, [*Law Lib. N. S.* 85,] 259, 314.) (*b.*) The bequest of personal estate to be applied to lands in another jurisdiction, is no exception to the rule that the law of the domicil governs the disposition of the personalty. (*Wood* v. *Wood*, 5 *Paige*, 596. *Hill on Trustees, pp.* 454, 468.) In *Wood* v. *Wood*, the testator, whose domicil was in the state of New York, directed that personal

estate and the proceeds of real estate required to be converted into personal, should be invested in lands in the state of Ohio, upon trusts valid in that state, though invalid here; and it was held by the chancellor that the direction to invest "in the purchase of Ohio lands, upon trusts which are illegal here, cannot be sustained." (*Id.* 603.) *Second.* As to real estate. (*a.*) The devise of lands in this state is also governed by the law of this state, *lex rei sitæ,* though made to a foreign devisee. (*Banks* v. *Phelan,* 4 *Barb.* 88. *Boyce* v. *City of St. Louis,* 29 *Barb.* 653, 657. *Story on Confl. of Laws,* 428. *Burge, Com.* 857, 858. *Att'y Gen.* v. *Stewart,* 2 *Meriv.* 143. *Mayor of Lyons* v. *East Ind. Co.* 1 *M. P. C.* 175.) In *Boyce* v. *City of St. Louis,* a devise for charity to the city of St. Louis, was declared void, under our statute, providing that "no devise to a corporation shall be valid, unless such corporation be expressly authorized by its charter, or by statute, to take by devise." (2 *R. S. p.* 57, § 3.) (*b.*) Though by the law of the foreign country, where bequests or devises for charity are intended to be carried out, such bequests and devises are valid as charities, and though by that law, such bequests and devises are valid, notwithstanding they create perpetuities, still such charitable bequests and devises, if not valid by the law of the domicil, and by the *lex rei sitæ,* will not be valid at all. (*Story on Confl. of Laws,* § 479. *Story's Eq. Jur.* § 1184. *Curtis* v. *Hutton,* 14 *Ves.* 537; 8 *Simons,* 300. *Phelps* v. *Phelps,* 28 *Barb.* 127; 23 *N. Y. Rep.* 69. *Boyce* v. *City of St. Louis; Banks* v. *Phelan, as cited supra. Burns, Ex.* v. *Smith,* 7 *Verm.* 241. *Magill* v. *Brown,* 1 *Brightley,* 369.) (*c.*) The converse of the last rule is true; that is to say, bequests and devises valid by the law of the domicil, or by the *lex rei sitæ,* are sustained, though to be performed in a foreign country. (*Magill* v. *Brown, cited supra. President of United States* v. *Drummond, Rolls,* 12th *May,* 1838, cited 7 *Cl. & F.* 155.) The only exception to the rule in respect to personalty is, where the assets are situated in a

foreign country, and the disposition made, is against the law or policy of such country. (*Skiff* v. *Solace*, 23 *Verm.* 279. *Mahomer* v. *Hose*, 9 *Smedes & Marsh*, 247. *Story on Confl. of Laws*, § 38. *Westlake, Int. Law*, 314.) In the present case, the domicil, and the assets, including the lands, except the farm at Monticello, are in the state of New York, so that the whole question must be governed by our law.

VIII. The first devise is a present devise, intended to take effect as a valid gift on the testator's decease, subject to be divested on failure of congress to act. The devise over to the people of the state of Virgrnia, is a future devise, intended to divest the first devise on a future contingency; and the same character attached to the devise to the religious corporations. There were no devisees or trustees at the testator's decease, competent to take, and the entire scheme depended upon legislation.

IX. It is well settled by decisions in the supreme court of the United States, that a *present* devise to persons incompetent to take, namely, an unincorporated association, is void, and cannot be helped by the statute of 43 Elizabeth, as to charitable uses. (*Baptist Association* v. *Hart's Executors*, 4 *Wheat.* 1. *Inglis* v. *Trustees Sailors' Snug Harbor*, 8 *Peters*, 99.)

X. By parity of reasoning, no future devise to persons incompetent to take at the testator's decease, can be made good by legislative act creating such competency—for it is not the case of a devise to a corporation to be created—but the devise is immediate to the *people* of the United States, or future to the substituted devisees; and the intended acts of legislation in question were for the purpose of working out the objects of the testator, and not to create a corporation to take and hold the property. This conclusion is subject to an exception in respect to the Hebrew Congregations, who were expected "to hold" the estate; but if they were incompetetent on the testator's decease, no future act of legisla-

tion could render them competent, to take the property from the heir.

XI. But it is well settled, by repeated decisions in this state, whose laws regulate the whole subject matter of the will, that the gift of real or personal estate to charitable uses, without interposing trustees, competent to take and administer the trust, or to an unincorporated association, or to a future corporation, whose coming into existence is not limited on lives, is void, both at law and in equity; and cannot be sustained by any exercise of the ordinary judicial jurisdiction of the court of chancery. The statute of Elizabeth does not, and never did exist in this state. (*Jackson* v. *Cory*, 8 *John.* 388. *Hornbeck* v. *Westbrook*, 9 *id.* 73. *Owens* v. *Missionary Association*, 14 *N. Y. Rep.* 381. *Phelps* v. *Pond*, 23 *id.* 69. *Beekman* v. *Bonsor*, *Id.* 298. *Downing* v. *Marshall*, *Id.* 366.)

XII. Devises and bequests to corporations to be created, though at one time supposed to be valid as executory devises at common law, cannot be supported in this state, since the revised statutes, unless limited to take effect on lives.

XIII. Lands were not devisable at common law, nor until the statute 32 Henry VIII. Corporations were expressly excepted from the benefit of this statute. That which was simply an exception under that statute, has been changed to an express exclusion in this state, and no corporation can take by devise unless authorized by its charter or statute. (2 *R. S.* 57, § 3.) The general statute excludes all corporations from taking real estate by devise or bequest. (1 *R. S.* 602, § 3.) A devise in trust for a corporation is invalid. (*Theological Seminary of Auburn* v. *Childs*, 4 *Paige*, 423.) A devise to a corporation in trust for an unincorporated church has been held invalid, though an act of the legislature was urged as ground for giving a capacity to take by devise, back by way of relation to the testator's death. (*Jackson* v. *Hammond*, 2 *Caines' Cases in Error*, 337. 1 *Greenleaf's Laws*, 71. *McCartee* v. *Orphan Asylum*, 9 *Cowen*, 437.)

XIV. If it be admitted, as it must be, that at the testator's death there was no competent devisee or legatee, and that some legislation was necessary to effectuate the purposes of the disposition, that legislation must necessarily be *foreign,* viz: by congress, or the state of Virginia. The devolution of property in this state cannot possibly be affected by the action of the legislatures of other states, or of the congress of the United States. 1. The rights of the heirs and next of kin vested immediately on the testator's death. They cannot be divested by an act of legislative authority. No acts have been passed by congress or the legislatures of Virginia and New York, nor is it likely any ever will be passed; for the reason, that on the testator's decease there was no corporation existing, nor any definite devisee to take the estate, and the property therefore vested *instanter* in the heirs at law and next of kin, and cannot be divested by any *ex post facto* exercise of legislative authority. 2. All any legislature could do, would be the creation of some body, which could take the property under the testator's will. 3. So that if the validity of the devise depended on such a creation, then the act would answer the purpose. 4. But if the validity of the disposition depended upon there being a competent devisee at the testator's death, then it is clear: That a title by succession, for want of interruption by a present valid gift to parties having a present capacity to take, cannot be affected by statute, so as to give a retrospective effect to a corporation which did not exist when the succession devolved. How can there be a present valid vested title in the heirs and kin, for want of other persons competent to take, and yet this title depending on the volition and future action of a foreign legislature? The right of succession can be interrupted only by the act of a competent testator substituting instead of the heir, a competent donee.

XV. Even where the devisee selected as a trustee is competent, the beneficiaries being uncertain, the court of chancery has no jurisdiction to enforce the charity, and the trust

therefore fails. The vice of uncertainty affects more directly and vitally the beneficiaries than it does the trustee. If the donees being uncertain—who are mere instruments to carry on a trust—vitiates the devise, why does not a similar taint affect a devise where the beneficiaries are uncertain? Uncertainty of individual objects would seem to be characteristic of charity, for personal or individual certainty has often been held fatal to it. (*Congregational Society* v. *Congregational Society,* 14 *New Hamp. Rep.* 315. *Wade* v. *American Col. Society,* 7 *Smedes & Marsh,* 663. *Bridges* v. *Pleasants,* 4 *Iredell's Eq. R.* 26. *White* v. *University, Id.* 19. *Pickering* v. *Shottwell,* 10 *Barr,* 23.)

XVI. The effect of sustaining such trusts is to confer upon individuals the power of creating corporations of unlimited capacity and duration.

XVII. The whole object of the devise is to establish a school at Monticello, in the state of Virginia. By the law of that state the devise of the land upon which the school is to be founded is absolutely void. It has been held there, that, independently of the statute of Elizabeth, the court of chancery cannot sustain and enforce a devise to charitable uses which would, without the statute, have been void at law, as vague and indefinite. The statute of 43 Elizabeth was repealed in Virginia. (2 *Kent's Com.* 288. *Gallego* v. *The Attorney General,* 3 *Leigh,* 450. *Janey's Ex.* v. *Latane,* 3 *id.* 327. *Wheeler* v. *Smith,* 9 *How. U. S. Rep.* 55.) The devise of the farm at Monticello being void, the whole intention of the testator falls, and with it all the devises and bequests under consideration necessarily fail.

SUTHERLAND, P. J.   I agree with Judge Mullin in the conclusion at which he has arrived, that the judgment of the special term should be reversed or modified to a certain extent, or in certain particulars, but I do not agree with him as to the nature of such modification, or with all his reasons or grounds for coming to the conclusion that he has reached.

Some of the questions in the case are intricate and novel, and I differ with the learned judge and state my own conclusions with diffidence.

I think the devise and bequest in trust of the Monticello farm, and of all the residue of the testator's estate, (not otherwise disposed of,) to the people of the United States, did not and cannot take effect, and is void; but that the subsequent devise and bequest of the same property to the people of the state of Virginia, or to the state of Virginia, is valid, and must be deemed to have taken effect.

1st. I concur with Judge Mullin in holding that the devise to the people of the United States should be considered as a devise to the government of the United States.

2d. I also concur with him in holding that this devise to the government of the United States, if the government can take under it, should be deemed a *present* devise, liable to be defeated subsequently by want of action on the part of congress, and not a devise on *condition* that congress take certain action. A devise is not a contract, and a party holding or taking under a devise does not hold or take under a contract. A devisee must be presumed to accept.

3d. I also concur with Judge Mullin in holding that our statute prohibiting corporations from taking by devise unless expressly authorized, &c. was not intended to apply either to the general, or the state, governments, and does not prevent the government of the United States taking under the devise.

4th. I also concur with him in holding that the government of the United States has power or capacity to take by devise generally; that is, that the government of the United States is an artificial being, or body politic, capable of taking by grant or devise, for its own benefit, or the benefit of the people of the United States. I think, too, it might take under a devise in trust for a charity to be administered or carried on in the district of Columbia, and that congress might provide by law for the administration of such charity there; because, as to the district of Columbia, congress may

be said to have all the powers of legislation that a state legislature has. But in this case the devise to the government of the United States is a devise in trust for a charity to be administered or carried on at Monticello, in the state of Virginia. The school is to be instituted and carried on there. The government cannot take under the devise, for its own benefit, or for the benefit of the people of the United States. The government ought not to be deemed capable of accepting the devise, or of taking under it, unless congress has power to provide by law for the execution of the trust; that is, for the administration of the charity, or the institution and carrying on of the school, in the state of Virginia. Congress has no such express power; and it is impossible to say that such power is to be implied as necessary to the execution of any of its express powers.

Congress might have power to create a private corporation for the purpose of carrying on the business of banking, or any other legitimate business, in a state, which might aid congress in executing any of its express powers; but congress would have no power to create a private corporation, for the purpose of administering or carrying on a private charity, in a state.

My conclusion is, then, that the government of the United States could not accept the devise, and had no power to take under it; and therefore, that the devise to the government of the United States is void.

5th. But it is plain, to me, that the testator intended, if the government of the United States did not, or could not, take under the devise to it, to devise the Monticello farm and the residue of his estate, not otherwise disposed of, to the government of the state of Virginia, in trust, for the same charity. I think, too, the government of Virginia had capacity to take as a body politic; and that the legislature of Virginia could provide by law for the institution of the school and the administration of the charity. If so, that the devise to the government of Virginia should be deemed to have taken effect on the death of the testator, subject however to

Levy *v.* Levy.

be defeated by want of subsequent action by the legislature of Virginia. (*See Avelyn* v. *Ward*, 1 *Vesey*, 420; *Fearne on Rem.* 406, &c.; *Norris* v. *Beyea*, 3 *Kern.* 273.)

6th. But perhaps the most important question remains to be considered; which is this. Did the testator, by the following provision, viz: "I direct my executors hereinafter named, or such of them as shall qualify, to invest the funds arising from said estate, in some safe paying stocks, as fast as they accumulate, and *to hold the whole of the property* and estate hereby devised and bequeathed, for said school and in their hands, *until* the proper steps have been taken by congress, or by the legislature of Virginia, or the said Hebrew Benevolent Congregations, to receive the same, and discharge said executors," &c. intend to devise and bequeath to, and vest in, the executors, the property and estate which had been previously devised and bequeathed for the school, until &c. ? If he did, then it is probable that all the previous devises and bequests for the school as well as for the other charities, must fall or fail, for then the devises to the governments of the United States and of Virginia, must be deemed to be *conditional* devises; that is, on the conditions that congress and the legislature of Virginia should or did pass laws accepting the devises, &c.; and the contingency of these devises and such devise to the executors until such contingent events happened, would render the estate and property in the hands of the executors under this devise inalienable during an uncertain period. I believe this point has recently been decided by the court of appeals in the Rose will case, (so called,) but I have not seen the opinions. Considering that the testator had previously declared in his will that some of his estate, real and personal, devised for the school, should be disposed of under any circumstances, but that the rent and income thereof was to be held inviolate for the purpose of the charity, and considering the words of *present* devise to the government of the United States, and other clauses of the will, not necessary to be particularly adverted to, I think the executors can do under a

power all and every thing he intended them to do under the provision of the will above quoted; that it is not nor does it contain an express devise to the executors; and that a devise to them ought not to be implied; especially as such devise, if implied, would probably defeat all of his devises and bequests for charity, and thus defeat his disposition by the will of the great bulk of his estate. (*See Tucker* v. *Tucker*, 1 *Selden*, 408.)

7th. The accumulation of the funds or income directed or authorized by this provision of the will is undoubtedly void.

8th. I think that the state of Virginia or its government, notwithstanding her or its political condition or relation to the government of the United States, in March, 1862, when the testator died and his will took effect, and notwithstanding the creation of a new state or political jurisdiction, in or over the westerly part of her territory, could take under the devise to her or to her government. Monticello, where the school is to be instituted and carried on, is not, I believe, within the new state, or political jurisdiction.

9th. The said devises to the governments of the United States and of Virginia are not within the act of April 13, 1860, (*ch.* 350, *Laws of* 1860,) which declares that "no person having a husband, wife, child or parent shall, by his or her last will or testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one half part of his or her estate, after" &c.; because 1st. I do not think that these governments are corporations within the meaning of the act, even if the words *benevolent, charitable, literary,* &c., &c. do not qualify the word corporation; but 2d. It is very plain that the words or adjectives benevolent, charitable, literary &c., &c. were intended to qualify, and do qualify, the word corporation; and surely these governments, if corporations, are not either benevolent, charitable, literary &c., &c. corporations, within the meaning and intent of the act.

10th. The judgment of the special term should, I think, be modified in accordance with the foregoing conclusions.

CLERKE, J. concurred.

MULLIN, J. It would be to me a source of profound regret if the benevolent intentions of Commodore Levy, as manifested by his last will, should be defeated by reason of some rule of law which we are bound to recognize and enforce. The case is one in which it is the duty of the court to sustain the trusts in the will if it can be done without violating some well settled legal principle.

When a testator sets apart a large share of his estate to provide for the education of the orphan, it excites regret that our legislature should have found it necessary to embarrass, if not altogether forbid, the creation of trusts necessary to carry into effect such intentions.

The objects contemplated by the testator must be carried into effect in the state of Virginia where the premises are situate on which the school is to be located.

Part of the personal and real estate to be applied to the support of the school are situated in this state, and hence the only power which our courts have is to direct that the proceeds or income of the property within their jurisdiction be paid over to the trustee, if there is one authorized to establish and carry on such school. (*Story's Eq. Jur.* § 1186.)

We cannot enforce the execution of the trust, because neither the trustee nor the subject of the trust is within this state. And we can only inquire into the validity of the devise in question so far as to ascertain that the object of the trust is not in violation of the laws of this state relating to the creation and transmission of estates in land or the conveyance of personal property. (*Story's Eq. Jur.* §§ 1184, 1185, 1186.)

The courts in the state where the trust is to be executed will determine for themselves, in view of their own laws,

whether the trust is one which may be legally carried into effect.    (*Story's Eq. Jur.* § 1186.)

The purposes of the trust created by the will are charitable, within the meaning of that term in the statute, 41 *Elizabeth, ch.* 4, relating to charitable uses, and as used by judges and writers on the law of charities ever since the passage of that statute.    In the preamble of the statute referred to, gifts, devises &c. for *schools of learning, free schools* and *scholars of universities* are recognized as valid.    (*Story's Eq. Jur.* § 1160.)

The use being charitable, and therefore legal, and a trustee designated, and a class or classes of persons named who are to be the *cestuis que use,* it would seem to follow that the trust was operative, and is so unless the trustee named has not the legal capacity to accept the trust, or to take the estate devised, or unless it is in violation of our statute designed to prevent the suspension of the absolute power of alienation beyond two lives in being at the death of the testator.

The devise is to the people of the United States, and it is urged that as there is no corporate body by that name, and no one or more of the people named, the devise is bad for uncertainty as to the trustee.    It is true there is no corporation known as the people of the United States; but it is too clear to require argument to show that the testator intended the government of the United States as the trustee to execute the trust.

When the person or corporation intended to be appointed trustee is misnamed, but is nevertheless so described in the will as to enable the court to ascertain, clearly, the person intended, the misnomer will be disregarded and the person answering the description will be recognized as the trustee. (1 *Jarm. on Wills,* 330, 331, 339, *note* 2, 340, *note* 1.)    In *Minot et al. executors &c.* v. *The Boston Asylum and Farm School,* the testator gave the residue of his estate to the Boys' Asylum and Farm School.    The executors filed their bill in equity alleging that there was no such association or corpora-

tion, but the property was claimed by a corporation known as the Boston Asylum and Farm School for indigent Boys, and praying that the court would ascertain to whom the property belonged. It was held that the Boston Asylum and Farm School was the devisee intended, and the property was ordered to be paid over to it. (*Tinker* v. *Seaman's Aid Society,* 7 *Metc.* 188. *N. Y. Institution for the Blind* v. *How's Ex'rs,* 10 *N. Y. Rep.* 84. 4 *Barb.* 80. 4 *John. Ch.* 607. 4 *Paige,* 271. *Angell & Ames on Corp.* §§ 99, 185. 11 *Eng. Law and Eq. Rep.* 190.)

I entertain no doubt but that the government of the United States is the trustee intended by the testator; nor but that the United States are to be deemed and taken to be the trustee, notwithstanding the people of the United States are named.

The next objection urged to the validity of the devise is that the United States cannot take by devise, and hence the trust must fail for want of some person or body corporate to take. In this objection is involved another, which is that the government cannot be appointed, or if appointed, cannot act as trustee.

The first objection is predicated on our statute relating to devises, (3 *R. S. 5th ed.* 138, § 3,) which provides that "such devise may be made to every person capable by law of holding real estate; but no devise to a corporation shall be valid unless such corporation be expressly authorized by its charter, or by statute, to take by devise."

The government, whether state or national, is not a corporation within the meaning of this statute, and hence the prohibition cannot apply to them. The corporations intended to be prohibited from taking by devise are those private or municipal corporations which are created by and derive all their powers from the legislature.

But if this is not so, if governments are to be deemed and treated as corporations, I still think they are, in the absence of express prohibition in their constitutions, capable of taking

by devise. In order to ascertain what powers a corporation may lawfully exercise, we must go to its charter, if it have have one, or, if it has none, then to the objects for which it was created, and then such powers will be implied as are necessary to attain such objects. The charter of the government of the United States is its constitution. That instrument enumerates express powers delegated to its various departments, but it also gives such implied powers as may be necessary to carry express powers into effect. Amongst its implied powers is the power to acquire title to real and personal property. This may be done under its power to declare war — to make treaties — to regulate commerce, and as a necessary incident to its power to support an army and navy. Indeed so vitally necessary is such power that government could not be carried on without it. The mode of acquisition is not prescribed. It may acquire it, therefore, in any way in which it is competent for an individual to acquire property by gift, or grant, or devise.

The United States not deriving any of its powers from or under any of the laws of this state, is not bound by any prohibition imposed by those laws on corporations. Our courts are doubtless bound to see that foreign corporations claiming title to property in this state have by their charters authority to take such title. But beyond this, I apprehend, we cannot go.

In *Comyns' Digest, title Devise*, 1, it is said all persons may take by devise who may take by grant. The United States are in the daily practice of taking lands by grant, for the purpose of light houses, forts, arsenals, barracks, custom houses, post offices and court houses. If then the rule is a general one that those who can take by grant are capable of taking by devise, it would seem to follow necessarily that the United States may take by devise.

It was the rule at common law that a corporation could not take by devise, (*Angell & Ames on Corp.* § 177,) and it is

argued that this rule of the common law being in force at the time of the separation of the colonies from Great Britain, it became a part of the common law of the United States, and hence corporations created by or under the authority of the United States cannot take by devise. Believing as I do that the United States is not a corporation within the meaning of the rule of law referred to, I will not occupy more time in discussing these questions.

The other objection, viz. that the United States cannot accept a trust, remains to be considered.

It is said in *Williams on Executors,* p. 198, that the king may be appointed executor. As the executor holds the estate in trust for those interested in the estate, it follows that to this extent the king may take the property in trust.

It does not seem to have been directly adjudicated in England that the king may be trustee. Yet it would seem to have been repeatedly asserted that he may be not only appointed trustee, but that equity may, if the king accepts, enforce performance of the trust. (*Hill on Trustees,* 61, *and cases cited.*)

Mr. *Lewin,* in his treatise on *Trustees,* p. 30, says: "The sovereign may sustain the character of a trustee, so far as regards capacity to take the estate, and to execute the trust, but great doubts have been entertained whether the subject can by any legal process enforce performance of the trust."

While there may be said to be some doubt whether the king or queen of England may be appointed trustee, it seems to me that in this country there is no reasonable doubt but that the government may become a trustee.

In this state, and indeed in all civilized countries where there are laws regulating the transmission of property by will and in cases of intestacy, provision is necessarily made for the control and disposition of property when a person dies without heirs or next of kin. In such cases the government appropriates it to its own use; but it takes the property

subject to the equities with which it was charged in the hands of the intestate.

So also, provision is made, in this state, for the escheat of lands conveyed to aliens not authorized by law to purchase and hold lands. (1 *R. S. 5th ed.* 685, § 1 *&c.*) It is provided (3 *id.* 2, § 2,) that escheated lands held by the state shall be subject to the same trusts &c. to which they would have been subject had they descended. (*See Bullard & Tiffany's Law of Trustees,* 328 *&c.*)

The United States stands in the same relation to the people of the District of Columbia that this state does to its cit·izens. It is clothed by the constitution with unlimited power over said district. It would seem to follow that the government of the United States is entitled to exercise the same power over the estates of persons dying without heirs, and over lands escheated, that is exercised by this and other states in such cases. This point would seem to be set at rest by the case of the Smithson bequest to the United States. I have not before me a report of that case, but my recollection is that Mr. Smithson, an Englishman by birth and a citizen of that country, at his death bequeathed to the United States all, or nearly all, of his property, to be applied to the establishment of an institution for the increase and diffusion of useful knowledge. The government, through its agent, Mr. Rush, claimed the fund, and the English courts held the government entitled to it. Congress accepted the trust, and made provision for carrying it into effect. This case furnishes the highest evidence of the power of the government to take property in trust for a charitable use. Every department of the government gave its sanction to the acceptance of the bequest, in the most solemn manner, and it seems to me the question should be considered settled.

It is further objected that the devise being to the people of the United States, or to such persons as congress shall appoint to receive the property, the title is in abeyance, until congress shall accept the trust and appoint persons to carry

Levy *v.* Levy.

it into effect, and that such a suspension renders void the devise.

It seems to me quite clear that it was not the intention of the donor to leave it doubtful to whom the estate should pass on his death, but that his intention was to devise the property to the United States; congress to designate the persons who should manage the fund. If I am right in this, the estate vested at once in the government, subject to be divested by its refusal to accept the trust or neglect to discharge its duties.

If the United States has capacity to take the estate and should afterwards refuse to execute it, then the question will arise whether the state of Virginia, or the Hebrew Corporations, will be capable of taking under the will. I do not deem it necessary to examine these questions now, because I cannot doubt that congress will at once accept, and take the necessary steps to give effect to the benevolent and generous intentions of the testator. But if congress refuse or neglect to accept, and the state of Virginia, by reason of her complicity in the rebellion against the United States, be incapable of taking the estate, and if it should happen that the corporations should be incapable of taking, a court of equity would appoint some person to discharge the duties of the trust. The rule of equity is that when a valid trust is created, it shall not fail for want of a trustee.

It is urged by counsel that the trust is void as creating a perpetuity, and that the trust is not one authorized by our statutes. The court of appeals has held, on several occasions, that a devise to a charitable use is valid notwithstanding both of the difficulties suggested. (*Williams* v. *Williams*, 4 *Seld.* 524. *Owens* v. *Missionary Society of the M. E. Church*, 4 *Kern.* 380. *Auburn Theological Seminary* v. *Kellogg*, 16 *N. Y. Rep.* 83. *Leonard* v. *Burr*, 18 *id.* 96. *Beekman* v. *Bonsor*, 23 *id.* 298.)

The clause of the will that directs the executors to accumulate the fund until the proper steps have been taken by

congress or the legislature of Virginia, or the Hebrew Benevolent Associations, to receive the same and discharge said executors, may be void under the statute of this state. (3 *R. S.* 5th ed. 13, § 37. *Id.* 75, 76, §§ 1 *to* 5 *inclusive.*) But if void it does not impair the validity of the devise. It was held in *Williams* v. *Williams,* cited *supra,* that where a legacy is given to a religious corporation for a purpose authorized by law, but with a direction that it accumulate until it reaches a certain sum, before its income shall be expended, the direction only is void, and the legacy is not defeated. It is immaterial, therefore, whether the clause in question is or is not valid.

Without examining any other of the numerous questions presented by the respective counsel, I am constrained to hold that the part of the judgment of the special term which held the devise to the United States void should be reversed, and a decree entered declaring the validity of the trust, and that the residue of the judgment of the special term be affirmed.

Judgment of special term modified.

[NEW YORK GENERAL TERM, November 30, 1863. *Sutherland, Clerke* and *Mullin,* Justices.]