CITY OF QUINCY *vs.* ATTORNEY GENERAL & others.

Norfolk.    December 11, 12, 1893. — January 11, 1894.

Present: ALLEN, HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Bill for Instructions — Devise and Legacy — Charitable Trust — " Guaranteed "*
*— Forfeiture.*

Where a bill for instructions is brought by a city, as trustee under a will of property devised to it upon certain charitable trusts, a corporation to which the property is limited over in certain events being made a defendant, and, although no instructions are asked on that point, setting up a claim to the property on the ground that the plaintiff has broken the conditions imposed by the will, the counsel signing the bill are the proper persons to argue it; and the allegation of a forfeiture must be regarded as a plea in bar, which, if made out, would show reason for refusing to give the instructions asked.

A testator, by his will, gave to a certain town all his real estate therein, " and all the pews I may own in the various meeting-houses or churches in and out of town, at my death, with the exception . . . , as a fund for purposes to be hereinafter mentioned, to be disposed of or kept as the town may think proper; the sales, together with the rents and profits and income, from whatever source obtained, to be kept as a perpetual fund guaranteed by the town with six per cent forever, for the purposes to be hereinafter mentioned." Then followed eleven clauses of directions, including an independent devise to a third person, one of which was as follows: " Whenever the income from the foregoing bequests shall be sufficient, in the opinion of the managers of said fund, or at least within twenty-five years after my decease, they shall establish and continue for the town . . . forever a female institute for the education of females from the age of ten to twenty years, who are native born," to be located on land given to the town by the testator.    He then provided as follows: " If the town . . . refuses to accept the above property upon the terms herein specified, or fail to comply with the words or intent of this will, as determined by good judges, or should surrender the property or use it for any other purpose than contemplated in this will, then I bequeath the said property to the Trustees of D. College, to be used by them, in the manner they may think best, for the promotion of science and literature." The town accepted the property so given, and did not surrender it or use it for any other purposes than those contemplated in the will.    *Held,* that the word " guar-

anteed " did not require any contract of the town, but meant that the fund was to be kept whole and applied as directed; and that the managers of the fund were directed to apply a reasonable portion of it to the purchase or construction of a suitable building or buildings for the use of the institute.

Upon a bill by a trustee under a will for instructions, if it does not appear that any conflicting claims are made, or are likely to be made, in respect of certain of the matters as to which instructions are asked, and no statement is made in the bill which shows that the present disposition of the trust fund requires the instructions prayed, the court will not consider whether they ought to be given.

Certain property was given by will to a town as a fund for establishing a female institute. The will provided that, if the town should "fail to comply with the words or intent of this will, as determined by good judges," or should use the property "for any other purpose than contemplated in this will," the property should go to a certain college; that the property was " to be perpetually managed by the selectmen " of the town ; and that, whenever the town became a city, " then the government of said city to have the management of said property for the benefit of said city." The town became a city, and the city established a board of managers of the fund, consisting of the mayor and other city officials and one citizen not a member of the city council; and the city also borrowed from the fund and charged itself interest. *Held,* that there was no forfeiture of the property by the city.

HOLMES, J.    This is a bill for instructions, brought by the city of Quincy as trustee under the will of Ebenezer Woodward of property devised to it upon certain charitable trusts. The Trustees of Dartmouth College, to whom the property is limited over in certain events, are made defendants, and, although no instructions are asked on that point, they set up a claim to the property on the ground that the plaintiff has broken the conditions imposed by the will. Perhaps, under the decisions in this State, instructions could be asked as to whether there had been a forfeiture. *Fairbanks* v. *Belknap,* 135 Mass. 179, 184. When trustees are allowed to maintain a bill for instructions upon a question in which they are interested, they are allowed to have their interests represented, but by different counsel from those supporting the bill. *Batchelder, petitioner,* 147 Mass. 465, 471. But if that rule would apply to a case like the present, still, as the question arises here, the counsel signing the bill were the proper persons to argue it. The allegation of a forfeiture must be regarded as a plea in bar, which, if made out, would show reason for our refusing to give the instructions asked. Whether the prayer in the answer, that the plaintiff may be ordered to transfer the fund to the defendants, could be sustained under St. 1887, c. 383, § 3, it is unnecessary to consider,

inasmuch as in our opinion the facts agreed do not amount to a forfeiture.

The limitation over in the will is as follows: "If the town of Quincy refuses to accept the above property on the terms herein specified, or fail to comply with the words or intent of this will, as determined by good judges, or should surrender the property or use it for any other purpose than contemplated in this will, then I bequeath the said property to the Trustees of Dartmouth College, to be used by them, in the manner they may think best, for the promotion of science and literature." The gift reads, " I give and bequeath to the town of Quincy, in the Commonwealth of Massachusetts and county of Norfolk, in its corporate capacity, all my real estate in the town of Quincy, and all the pews I may own in the various meeting-houses or churches in and out of town, at my death, with the exception, . . . as a fund for purposes to be hereinafter mentioned, to be disposed of or kept as the town may think proper; the sales, together with the rents and profits and income, from whatever source obtained, to be kept as a perpetual fund guaranteed by the town with six per cent forever, for the purposes to be hereinafter mentioned, viz." And then follow eleven clauses of directions, and also an independent devise to a third person, before the clause of forfeiture first above stated.*

The town of Quincy did not refuse to accept the property. It did accept it. It has not surrendered the property, or used it for any other purposes than those contemplated in the will. The only breach of condition that can be urged with any plausibility as an existing ground of forfeiture is that the town has failed " to comply with the words or intent of this will, as determined by good judges." The fact chiefly relied on as a failure to comply with the will is the alleged failure of the plaintiff to give such a guaranty as is required by the words last

---

* One of these clauses was as follows :

" Whenever the income from the foregoing bequests shall be sufficient, in the opinion of the managers of said fund, or at least within twenty-five (25) years after my decease, they shall establish and continue for the town of Quincy forever a female institute for the education of females from the age of ten to twenty years, who are native born," to be located on land given to the town by the testator.

quoted. They are taken to require an express contract with some one not specified guaranteeing six per cent interest, as a condition precedent to the vesting of the gift; or, if the making of the contract is not such a condition, the capacity to make it, at least, is said to be so, on the principle of *Bullard* v. *Shirley*, 153 Mass. 559. The guaranty is said to be the consideration and inducement of the gift.

If we adopted a construction of the will approaching this, we should have to consider whether, since the town accepted the devise without reserve, and thereby became bound to do what it lawfully could to observe the requirements of the testator, it did not contract with the executors as required, (*Cary Library* v. *Bliss*, 151 Mass. 364,) so far as it had power to do so, and whether the will could be taken to require any contract beyond what it was within the power of towns under the Constitution and statutes to make. If the condition were construed to go beyond the powers of the town, the further question would arise whether it was not void. *Drury* v. *Natick*, 10 Allen, 169, 183. *Giles* v. *Boston Fatherless & Widows' Society*, 10 Allen, 355, 357. *Jones* v. *Habersham*, 107 U. S. 174, 183. *McDonogh* v. *Murdoch*, 15 How. 367, 411, 412. But we are of opinion that the guaranty plays a much less important part in the testator's scheme than the defendants' argument assumes. In the first place the word "guaranteed" qualifies the word "fund," and the fund which is to be guaranteed is not the fund first mentioned in the words of gift, consisting of real estate and pews, some of which by clause ten of the same article cannot be sold or let for some years, but is to be made up from sales, rents, profits, and income. So long as the original real estate is kept, there is no need of a guaranty of that, and none is required. The requirement, therefore, plainly is a condition subsequent, as the town could have no such fund until it had received and held the gift for some time. Moreover, the provision does not express the object of the gift, as was the case in *Bullard* v. *Shirley*, but merely a means of securing the fund so that it may be forthcoming for application to the object. It does not set forth the consideration, but merely an administrative detail.

Again, what is to be guaranteed? Grammatically and primarily, the fund, and in our opinion, by a true construction, noth-

ing else.   The words "with six per cent" might be taken, no
doubt, to bring in interest also; but it seems to us more reason-
able to regard these words as directing that the returns expected
from the guaranteed fund, estimated at what at the date of the
will was a conservative rate of interest, also were to be kept and
applied as set forth.   It is impossible that the testator should
have expected the town to guarantee interest on the whole of
the fund, for the institute was to be built and furnished, and no
source of money for these purposes was provided except the fund
in question.   The testator cannot have meant that the money
used for the building and plant should be guaranteed to yield six
per cent interest.   So again he recommends the clearing out of
a creek and the building of wharves.   He cannot have expected
a constant return to be guaranteed from money used in this
way.   But, furthermore, we are not to construe the will as im-
posing a condition which is contrary to law, unless the language
plainly has that meaning.   We are not to assume, without
necessity, that the testator either was ignorant of pretty obvious
law, or defied it in shaping the conditions of a scheme which he
was anxious to have carried out.   Grammatically, we construe
"with six per cent" as qualifying "kept," and substantially as
qualifying the application ordered, which may be expressed by
adding to "kept" the implied words "and applied."   Limited
as we have limited it, the word "guaranteed" does not require
any contract of the plaintiff, but is used in a popular sense to
indicate that the fund is to be kept good and applied as directed.

It should be noticed that in clause ten, which is but a few lines
before the limitation over, five things are mentioned, to each of
which the testator expressly attaches forfeiture.*   Other wishes

---

* Clause ten of article five of the will was as follows:—

"I ordain that, under penalty of losing or forfeiting this donation, the
town of Quincy do not allow any part of the farm which I leave to the town
in this my will, north of the brook running through it, to be sold under
ten (10) years after my decease; and also that the town, or its agents, do
not sell or lease lot marked on the plan number thirty-three (No. 33), or
permit, or cause to be permitted, any bridge over Black's Creek, so called,
for the space of twenty-five (25) years after my death.   The town or its
agents are forbid, under penalty of forfeiture to my heirs, cutting, opening,
or making, or permitting to be cut, opened, or made, any street, road, or pas-
sageway through lot No. 33 (thirty-three) to Mount Wollaston, for the space

have been expressed, with no such condition attached. This may not be conclusive as to the scope of the words " fail to comply with the words or intent of this will," but it goes far to show that forfeiture was not the sanction of every detail which the testator's careful forethought suggested.

Finally, it is questionable at least whether the words " as determined by good judges " do not mean that there must be a failure to comply with the intention expressed in the will after the intention has been declared judicially before the shifting clause comes into operation. At least it is plain from the whole will that the great thing in the testator's mind, his dominant intent, was to establish the female institute, and the general intent gathered from all the words must prevail over any small detail which interferes with it unless clearly he makes exact compliance essential. Some conditions subsequent he has imposed in terms by clause ten of article five. But even if in a vague way the testator did have it in his mind that the town should guarantee interest at six per cent on so much of the special fund as should not be appropriated towards the building and plant of the institute, he has used no words so exact and definite as to create a forfeiture if it should fail to do what it has not power to do. See further *Stanley* v. *Colt*, 5 Wall. 119, 165, 166.

The will, after providing that the property " is to be perpetually managed by the selectmen " of Quincy, provides further, whenever the town becomes a city " then the government of said city to have the management of said property for the benefit of said city," etc. The city has established a board of managers of the fund, consisting of the mayor and other city officials, and one citizen not a member of the city council. It is urged that this is a breach of condition. We perceive no condition and no breach. The fact that the city has borrowed from the fund and charged itself interest, although it may be open to animadversion, is not a forfeiture.

The opinion which we have expressed disposes of the second, third, and fourth matters upon which instructions are asked, so

---

of twenty-five years after my decease ; and if the county commissioners cut, open, or make any road or passageway through land next Mount Wollaston, then the town of Quincy forfeits all rights to the property."

that we are relieved from considering whether they are within the proper scope of a bill for instructions. With regard to the fifth, sixth, seventh, and eighth matters,* it does not appear that any conflicting claims are made, or are likely to be made, in respect of them, and no statement is made in the bill which shows that the present disposition of the fund requires the instructions prayed. *Putnam* v. *Collamore*, 109 Mass. 509, 512. The language of the will is clear, and the trustee asks whether of its own motion it is at liberty to disregard that language.

There remains only the first question, whether the plaintiff "can safely invest any part or the whole of the property of said fund in the purchase or construction of a suitable building or buildings for the use of said school." This we have answered already by implication. The purpose of the gift to the plaintiff is stated to be that at latest within twenty-five years from the testator's death the managers of the fund "shall establish and continue" a female institute, to be located on land given to the town by the testator. This means that the managers of the fund are to apply a reasonable portion of it to the purchase or construction of a suitable building or buildings, and cannot be restricted or cut down by the general provision before referred to for the keeping of the fund "with six per cent."

*Decree accordingly.*

*J. E. Cotter & C. F. Jenney, (J. W. McAnarney* with them,) for the plaintiff.

*G. F. Williams & G. W. Anderson,* for the Trustees of Dartmouth College.

---

* The matters upon which instructions were asked were as follows:

"5. Is the provision in said will restricting the use of said school to the education of females born in Quincy a valid restriction, and will it prevent the attendance at the same of females of the proper age resident at Quincy but not born therein?

"6. If the restriction referred to in the fifth prayer for instruction is valid, does it prevent the incidental use of said school by females of proper age resident in Quincy but not born therein, upon payment for tuition?

"7. Under the provisions of said will, are females of the proper age, born in Quincy but not resident therein, entitled to attend said school?

"8. Can girls of the proper age who do not reside in Quincy be permitted to attend said school by paying for their tuition?"