Louis Bell & another, executors, *vs.* Mary Nesmith & others.
Same *vs.* Treasurer and Receiver General & others.

Middlesex.   January 23, 1914. — March 2, 1914.

Present: Rugg, C. J., Loring, Sheldon, De Courcy, & Crosby, JJ.

*Devise and Legacy.*

A testator by his will directed that upon the death of the survivor of his wife and children, the trustee under his will should convey and deliver certain real estate and a fund of $60,000 to the State of New Hampshire, to hold the property and apply the income of the fund for the support, maintenance and education of the indigent blind of that State. By a codicil he directed that the trustees should not convey the property or deliver the fund "until said State shall have by proper legislation accepted the said real estate and said reserved sum, for the use mentioned in my said will and upon the conditions following." The conditions named were that the State never should sell or dispose of the real estate and should not lease any part of it for a longer term than five years, that the State should keep the buildings on the real estate in good repair and in case of their destruction should rebuild them, and that on receiving the fund of $60,000 the State should pay and make good as the income thereof the amount of six per cent per annum thereon, and, after defraying necessary expenses, should apply the net income of the fund and the rents from the real estate to the aid, support and education of the indigent blind of the State of New Hampshire. In the year following the death of the testator, the Legislature of the State of New Hampshire by a joint resolution accepted the gift "for the uses and upon the conditions named in said will." Forty-three years later, while some of the children of the testator still

were living, the Legislature of the State of New Hampshire by another joint resolution reaffirmed its acceptance of the gift "for the uses and upon the conditions named in said will." *Held,* that it was a condition precedent to the vesting of the gift that the State of New Hampshire by proper legislation should accept the devise and bequest for the uses stated in the will and upon the conditions prescribed in the codicil, that the State of New Hampshire had complied with this condition precedent and accordingly had acquired a vested remainder in the property; and that it was not necessary to consider whether the provisions of the codicil also constituted conditions subsequent, a breach of which in the future might make defeasible the title of that State.

BILL IN EQUITY, filed in the Probate Court for the county of Middlesex on April 25, 1913, by the executors of the will of Eliza J. Bouton, late of Cambridge, who died on May 20, 1911, and who was one of the children of John Nesmith, late of Lowell, who died on October 15, 1869, joining as defendants the Treasurer and Receiver General of the Commonwealth, the State of New Hampshire and the trustees under the will of John Nesmith, and praying for instructions as to the meaning and effect of the will and codicil of John Nesmith by which certain property was given or attempted to be given to the State of New Hampshire, and as to whether it was the duty of the plaintiffs to pay an inheritance tax on the transfer by the will of Eliza J. Bouton of her alleged vested interest in such property.

In the Probate Court the case was heard by *McIntire,* J., who found that the gift to the State of New Hampshire was good and valid, that the State of New Hampshire had complied with the terms of the will and codicil of John Nesmith, and that Eliza J. Bouton had in the property in question only an equitable life interest which terminated with her death, so that no inheritance tax was due to the Commonwealth.

The residuary devisees and legatees under the will of Eliza J. Bouton and the Treasurer and Receiver General appealed.

The second case was also a bill for instructions brought in the Probate Court by the same plaintiffs against the Treasurer and Receiver General and others. In this case a similar decree was made; and the Treasurer and Receiver General appealed.

The two cases were consolidated by an interlocutory decree and came on to be heard before *Braley,* J., who at the request of the parties reserved them for determination by the full court.

*G. W. Mathews,* for the executors of the will of Eliza J. Bouton, stated the case.

*H. R. Bailey,* for the residuary devisees and legatees under the will of Eliza J. Bouton.

*L. R. Eyges,* Assistant Attorney General, for the Treasurer and Receiver General.

*J. S. Matthews* (of New Hampshire), for the State of New Hampshire.

SHELDON, J. John Nesmith, hereinafter called the testator, bequeathed and devised the sum of $60,000 and certain real estate in Lowell to trustees, in trust, after the decease of his wife and children, "to pay over, deliver and assure the said estate and property . . to the State of New Hampshire in fee, to hold the same and apply the income thereof for the aid, support, maintenance and education of the indigent blind of said State, forever." By a codicil to his will he directed that his trustees should not "deliver, make over or convey to the State of New Hampshire" either the real estate or the fund of $60,000, "until said State shall have by proper legislation accepted the said real estate and said reserved sum, for the use mentioned in my said will and upon the conditions following, viz.,

"First. That said State shall forever hold said real estate . . . and shall neither sell nor dispose of the same nor any part thereof, nor shall lease the same nor any part thereof for a longer term than five years at one time, nor shall in any way directly or indirectly make or permit any agreement or arrangement whereby said State shall part with the full control thereof without any restriction, except so far as the same may be abridged by such a tenancy for a term no greater than five years.

"Second. That the buildings on said lot . . . shall be by said State kept at all times in good repair, and rebuilt in case of their destruction, or requiring rebuilding.

"Third. That said State shall become bound, on receiving said reserved sum of sixty thousand dollars, . . . to pay and make good as the income thereof the amount of six per centum per annum thereon, which said income, together with the rents of said real estate, after defraying all necessary expenses thereon including insurance if made, shall be set aside and constitute a fund to be known as the 'Nesmith Fund,' which fund shall be

annually applied, forever, to the aid, support and education of the indigent blind, of the State of New Hampshire."

He then made this provision: "And upon the due enactment by said State of a law or laws of the foregoing tenor and effect, and after the decease of my last surviving child, my trustees are authorized and directed to deliver, make over and assure to said State, said real estate and said reserved sum, as, and for the purpose provided in my said will."

The State of New Hampshire has undertaken to accept this bequest and devise. In 1870 a joint resolution was passed by both branches of its Legislature and approved by its Governor, which read as follows:

"Whereas, the Hon. John Nesmith, late of Lowell, in the County of Middlesex, and Commonwealth of Massachusetts, by his will approved on the ninth day of November, one thousand eight hundred and sixty-nine, directed the trustees therein named to retain in their hands sixty thousand dollars of his estate, and also certain real estate therein described, and by his will aforesaid directed the said trustees, upon the decease of the survivor of his children, to pay over, deliver and assure the said estate and property to the State of New Hampshire, to hold the same in fee, and apply the income thereof for the aid, support, maintenance and education of the indigent blind of said State; now therefore,

"Resolved by the Senate and House of Representatives in General Court convened:

"That the State gratefully accepts the noble gift of the said Hon. John Nesmith to his native State, for the uses and upon the conditions named in said will, and that the said Hon. John Nesmith is entitled to be ranked among the most munificent benefactors of the unfortunate class of persons for whose benefit the donation is made.

"Resolved, that a copy of the said will of the said Hon. John Nesmith be filed in the office of the Secretary of State, and that his excellency the Governor be authorized and requested to furnish John A. Buttrick, James K. Fellows and Charles P. Talbot, the trustees and executors named in said will, and each of them, with a copy of these resolutions, and also to take such further measures as he may think expedient to secure to the State the benefits of this donation."

In 1913, another joint resolution was so passed and approved, which read as follows:

"Resolved by the Senate and House of Representatives in General Court convened:

"That whereas, the Hon. John Nesmith, late of Lowell, in the County of Middlesex and the Commonwealth of Massachusetts, by his will approved on the ninth day of November, one thousand eight hundred and sixty-nine, directed the trustees therein named to retain in their hands sixty thousand dollars of his estate, and also certain real estate therein described, and by his will aforesaid directed the said trustees, upon the decease of the survivor of his children, to pay over, deliver and assure the said estate and property to the State of New Hampshire, to hold the same in fee, and apply the income thereof for the aid, support, maintenance and education of the indigent blind of said State;

"Whereas, certain litigation has been instituted in the courts of the Commonwealth of Massachusetts, the object of which is to invalidate said bequest to this State and to divert the fund to the heirs of said Nesmith;

"Whereas, the Legislature of this State by chapter 52 of the Session Laws of 1870 accepted this noble gift upon the conditions named in said will, and authorized and requested the then Governor to take such further measures as he might think expedient to secure to the State the benefits of this donation; now, therefore,

"Resolved by the Senate and House of Representatives in General Court convened:

"That the State of New Hampshire reaffirm its grateful acceptance of this noble gift for the uses and upon the conditions named in said will;

"That we pledge the faith and credit of the State to fulfilling the conditions named;

"That His Excellency the Governor be authorized and directed to take all necessary measures to protect, conserve and enforce the rights of the State in said gift."

It is plain that the testator did not intend that the property should vest in the State of New Hampshire until that State by proper legislation should have accepted the same. This was a condition precedent to the right of the devisee coming into existence. Unless it has been complied with, no title has passed to the

State of New Hampshire. *Bullard* v. *Shirley,* ˋ153 Mass. 559. *Pope* v. *Hinckley,* 209 Mass. 323, 328. *Chamberlayne* v. *Brockett,* L. R. 8 Ch. 206, 211. The condition precedent was that the State of New Hampshire should by proper legislation accept the devise and bequest for the use mentioned in the will; but that was not all. The acceptance must be made also upon the conditions further stated in the codicil, as to the perpetual holding of the real estate and the keeping of the buildings thereon in good repair and the rebuilding of them by the State if necessary, and as to the obligation of the State to guarantee a fixed rate of interest upon the money bequeathed, and to use it for the purpose specified. It is true that but for the express language of the codicil these latter provisions could have been nothing more than conditions subsequent, the violation of which might have caused a forfeiture of the title of the State, but which would not have prevented the title from passing to the State in the first instance, and so would not justify a refusal to pay over and transfer the fund and the real estate to the State. *Quincy* v. *Attorney General,* 160 Mass. 431. *Finlay* v. *King,* 3 Pet. 346, 374. *Sherman* v. *American Congregational Association,* 113 Fed. Rep. 609. It is ˋtrue also that the question whether any particular provision is to be taken to create a condition precedent or merely a condition subsequent is to be determined upon a consideration of the whole instrument, and that the intention to create a condition precedent which would prevent the vesting of title is not lightly to be inferred, but must clearly appear to have been in the mind of the testator. *Quincy* v. *Attorney General,* 160 Mass. 431. *Jones* v. *Habersham,* 107 U. S. 374. *Warner* v. *Bronson,* 81 Vt. 121. *Pearcy* v. *Greenwell,* 80 Ky. 616. But there is no room here for the application of that doctrine. After stating the kind of acceptance which he chose to make the condition of his bounty's taking effect, and providing that it must be not only for the use mentioned in his will, but also upon the conditions further specified he expressly provided that it was after the enactment of such legislation that the transfer and payment were to be made by his trustees to the State. This fixed it beyond a peradventure that the right of the State was not to accrue until it should by appropriate legislation have made the acceptance which was required. So far we are in accord with the contention made by the Attorney Gen-

eral and by the other parties interested in the estate of Mr. Nesmith.

The next question is whether the State of New Hampshire has complied with this condition precedent. It first passed the joint resolution of 1870 which has been set forth. This was appropriate legislation. By it the State in terms accepted the gift "for the uses and upon the conditions named in said will" (which of course included the codicil). By the joint resolution of 1913, it reaffirmed that acceptance for the same uses and upon the same conditions, and pledged the faith and credit of the State for their fulfilment. On its face that was enough.

The fact that the limitation to the State cannot take effect until the making of the particular acceptance required does not make the limitation itself too remote. Doubtless an estate limited *in futuro* to a charity, like any other estate which is to arise only upon the happening of some future event, must become vested, at least in interest, within the time prescribed by the rule against perpetuities. *Merrill* v. *American Baptist Missionary Union,* 73 N. H. 414. *Smith* v. *Townsend,* 32 Penn. St. 434. But here the acceptance by "proper legislation" must be made within a reasonable time, and of course must be made, if at all, within the period fixed by that rule. Properly construed, the language of the testator requires an acceptance within that time, and so the limitation is a valid one. Whether for other reasons the acceptance must be made before the expiration of the precedent life estates need not now be determined, for even the legislation of 1913 was within that limit, since some of the children of Mr. Nesmith are now living.

But it is contended that this acceptance was not sufficient, because it did not legally bind the State to the future observance of the conditions. It is argued that the condition in perpetual restraint of alienation is unlawful and impossible of enforcement; that the condition for the perpetual payment of interest on the money bequeathed at the rate of six per cent per year cannot be performed, unless any deficiency in the amount realized from time to time shall be made up by taxation, and that the State cannot bind itself by an agreement that it always will levy such taxation. And it is contended that since the trustees are not to make the transfer and payment to the State until it shall have "become bound" to pay and make good the annual income at

that rate, and since, as it is contended, the State cannot become so bound that the obligation always shall be enforceable against it, therefore the right of the State not only has not become, but never can become, an existing and vested right. *Universalist Society in Sweden* v. *Kimball*, 34 Maine, 424. *Den* v. *Hance*, 6 Halst. 244, 257. *Reuff* v. *Coleman*, 30 W. Va. 171. *McDonogh* v. *Murdoch*, 15 How. 367, 410, *et seq.* *Chamberlayne* v. *Brockett*, L. R. 8 Ch. 206, 211. But the answer to this is that the testator did not require that the State should become bound to the strict fulfilment of these conditions by an obligation enforceable in any court. He required only the binding force of proper legislation. And he stated exactly what he meant by that term, to wit, "the due enactment by said State of a law or laws of the foregoing tenor and effect." This was the manner in which he required that the State should become bound, and this was all that he required. He did not concern himself, as to this, with the question whether such laws could be repealed or whether the enforcement could be compelled by the courts. This was the kind of legislation that he desired.

It follows that the State of New Hampshire has complied with the condition precedent created by the will of Mr. Nesmith, and has a vested right to his bounty.

We are not now concerned with the question whether these provisions constitute conditions subsequent, so that any failure to observe them in the future might destroy the title of the State. It is not to be presumed that there will be any such failure. *Drury* v. *Natick*, 10 Allen, 169, 183. Nor need we consider what complications hereafter may arise if, with or without the consent of a court of competent jurisdiction, the State should undertake to sell the real estate devised to it, or should fail to keep in good repair the buildings standing thereon, or to replace them in the event of their destruction. It was a condition precedent that the State should accept the gift upon these conditions; and it has done so, and has pledged its faith and credit for their observance. It was not made and could not have been made a condition precedent to the vesting of its right that after such vesting it still should observe them.

Although we are not aware that this precise question has arisen before, our conclusion is in accord with the language and the

manifest intent of the testator.   It harmonizes with the reasoning upon similar questions of such decisions as have been called to our attention. *Fellows* v. *Miner,* 119 Mass. 541. *Drury* v. *Natick,* 10 Allen, 169. *Quincy* v. *Attorney General,* 160 Mass. 431. *Sheldon* v. *Stockbridge,* 67 Vt. 299. *Levy* v. *Levy,* 40 Barb. 585. *Santa Clara Female Academy* v. *Sullivan,* 116 Ill. 375. *White* v. *Keller,* 68 Fed. Rep. 796. *Roche* v. *M'Dermott,* [1901] 1. Ir. R. 394.

The result is that the remainder in the subject matter of this gift is vested in the State of New Hampshire, and that Mrs. Bouton had only an equitable life estate therein, which terminated at her decease, and the plaintiffs are not liable in respect thereof to pay any legacy or succession tax to the Commonwealth.

*Decree accordingly.*