ATTORNEY GENERAL *vs.* CITY OF LOWELL.

Suffolk.    March 5, 1923. — September 22, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, CROSBY, & PIERCE, JJ.

*Trust*, Public charitable trust. *Charity*. *Municipal Corporations*. *Evidence*, Common knowledge.

A testator, who died in 1870, by his will, in which he stated that he did so with the intent of devoting " in charity, a portion of " his property, " being impressed with the struggles in life of many people, who linger between competency and poverty who from . . . imperious cause are temporarily in need of charitable assistance, but are not paupers, and who by kindly assistance, sympathy, and advice, may soon become self-sustaining and self-relyant . . . and wishing to establish a fund for that purpose and to place the fund as far as possible beyond the peradventure of loss and exempt from the care and responsibility of " trustees under the will " having the charge of disbursing the income of the same," gave to the city of his domicil " and to the inhabitants thereof, as a body corporate " $25,000 " upon the condition that before the time of said payment, the proper and constituted authorities of said city, in a legal manner, shall well and truly and legally resolve and vote and make due record thereof to accept the said sum of money as a fund to be held for the said purposes and shall promise and shall pledge the said city and the inhabitants in due form of law, to ever thereafter pay to the Trustees hereinafter named and to their successors, six per cent. interest upon the said sum of twenty-five thousand dollars annually, in semi-annual payments of seven hundred and fifty dollars for each and every half year forever, thereafter, commencing in six months after said executors shall have paid the said sum of (25,000) to the Treasurer of said city." If the city did not accept the fund upon the

conditions named, it was to be paid to the trustees.   Three persons were named as " Trustees of said fund and of the income thereof, who, and their successors in said trust shall receive the said semi-annual payments of $750 of said city or the income thereof, and shall appropriate the same for the charitable assistance as is herein described, being residents of the city of Lowell, without distinction of nationality, color, or religious sect, in such manner and at such times as may to them seem most urgent and appropriate."   The city council in 1870, by unanimous vote of both branches in concurrence adopted a resolution accepting " the bequest . . . in the interest of the Poor of the City."   The fund then was paid to the city whose officers as a matter of bookkeeping carried it as an item of the city debt, did not hold it as a separate fund but apparently soon after its receipt expended it for general corporate purposes, until 1918 paying $750 semi-annually, appropriated annually from the tax levy, to the trustees under the will.   Beginning in 1919, the city refused to recognize any further responsibility as to the fund.   Upon a bill in equity by the Attorney General, it was *held*, that

(1) The gift under the will was a valid public charity;

(2) A reference in a subsequent clause of the will to the fund as one " loaned to the city " fell far short of divesting the clause above quoted of its character as creating a public charity;

(3) The city had capacity to accept the gift described and to act as trustee and to execute the trust;

(4) The concurrent resolution of each branch of the city council of the defendant was acceptance of the bequest " in a legal manner " as required by the will;

(5) The requirement of the will that the fund be accepted " as a fund to be held " for the purposes stated was a valid requirement which the defendant as well as any other trustee lawfully might perform;

(6) It is common knowledge that for some years, at least before the world war, investments of trust funds in appropriate securities to yield six per cent per annum were not available;

(7) In view of the dominant purpose expressed by the testator and since it should not be assumed without necessity that the testator was ignorant of obvious law or defied it in shaping the conditions of a scheme which he was anxious to have carried out, the words of the will referring in terms to the payment of six per cent by the city to the private persons named as trustees, which otherwise would seem to require the city to perform the act, unauthorized by law, of raising by taxation the sum of $1,500 for payment to the private individuals as trustees for the purposes named, were to be regarded as an estimate of the rate of interest to be expected at that time from conservative investments and a direction that the income should be applied as set forth in the will;

(8) No special act of the Legislature was needed under the terms of the will to enable the defendant to accept and execute every detail of his trust;

(9) If the portion of the will as to payment of interest in semiannual instalments be regarded as in form a condition, then, so far as it undertook to impose obligations upon the city for the future which by law it could not assume, it would be repugnant to the paramount and overbalancing testamentary design to establish the charity and would yield to that supreme overruling purpose;

(10) The trust having been accepted by the defendant and being for a charitable purpose, it could not afterwards be renounced or abandoned so as to defeat the charity;

(11) It was a plain violation of the defendant's obligation under the trust to spend the principal for any purpose;

(12) The defendant's duty was to make good its previous default in management and to restore the fund to its full amount;

(13) The defendant was required to restore the principal of the trust fund in full, to pay to the trustees under the will interest on the principal fund from the date of cessation of payments in 1918 until the time when the principal should be restored at a rate which should be found to be the rate fairly earned by trust investments during that period, to invest the principal fund when restored in securities appropriate for trust funds and to pay over semiannually to the trustees under the will income received from such securities.

BILL IN EQUITY, filed in the Supreme Judicial Court for the County of Middlesex on April 13, 1922, in the nature of an information by the Attorney General at the relation of the trustees under the will of Thomas Nesmith, who died in Lowell on July 31, 1870, to have declared and established as a public charity the trust set out in the first paragraph of that will, hereinafter quoted, to have its enforcement decreed and to have the defendant ordered " to pay to the successors in trust of the trustees named in said will the said interest on the sum of $25,000 which has become due since March 18, 1918, and . . . to pay said semi-annual instalments of interest as the same shall become due; " or, if the court should be of opinion that " the said city should not be compelled to pay any further sums as interest on said trust fund, then that said city be ordered to pay said sum of $25,000 to the successors in trust of the trustees named in said will, to be by them kept and the income thereof distributed as provided in said will."

The provision of the will of Thomas Nesmith which is the foundation of the proceeding was in full as follows:

" First.   Having formed the purpose to devote in charity a portion of the property which a Kind Providence has allowed me to accumulate, and being impressed with the struggles in life of many people, who linger between competency and poverty — who from accidental misfortune, sickness, failure of employment, or other imperious cause,

are temporarily in need of charitable assistance, but are not paupers, and who, by kindly assistance, sympathy and advice, may soon become self-sustaining and self-reliant not intending hereby to countenance or give encouragement to improvidence or idleness, but only to aid those who will be thereby encouraged and better enabled to sustain themselves; and wishing to establish a fund for that purpose, and to place the fund as far as possible beyond the peradventure of loss and exempt from the care and responsibility of the Trustees, having the charge of disbursing the income of the same, I Do, with the intent aforesaid and for the purposes aforesaid, give and bequeath to the City of Lowell, in the County of Middlesex and Commonwealth of Massachusetts, the City where I reside, and to the Inhabitants thereof, as a body Corporate, Twenty Five Thousand Dollars, (25,000) to be by my Executors paid over to the Treasurer thereof, within six months from the Probate of this will, upon the condition, that before the time of said payment, the proper and constituted authorities of said City, in a legal manner, shall well and truly and legally resolve and vote and make due record thereof to accept the said sum of money as a fund to be held for the said purposes and shall promise and shall pledge the said City and the Inhabitants in due form of law, to ever thereafter pay to the Trustees hereinafter named and to their successors, six per cent interest upon the said sum of Twenty five thousand dollars annually, in semi-annual payments of seven hundred and fifty dollars for each and every half year forever, thereafter, commencing in six months after said Executors shall have paid the said sum of $25,000 to the Treasurer of said City. But in case said City shall not accept said sum upon the conditions herein set out, then it is my will and I do hereby give and bequeathe said sum of twenty-five thousand dollars (25,000) to my said Trustees hereinafter named and to their successors, in trust, to be by them kept securely invested and the income thereof shall be distributed for the purposes of charity and relief of the poor as herein expressed and my said Executors are fully authorized and empowered to pay over the said $25,000 to said Trustees instead of to the Treasurer of said City.

" And further, in furtherance of this my purposed charity, and in relief of the persons and people herein before described in need of charitable assistance, and for the perpetuation of said charity, I do appoint George F. Richardson, John A. Buttrick, Owen Street, Samuel W. Stickney and Charles Hovey, all of said Lowell, Trustees of said Fund and of the income thereof, who, and their successors in said trust, shall receive the said semi-annual payments of $750.— of said City, or the income thereof, and shall appropriate the same for the charitable assistance as is herein described and to the persons described, being residents of the City of Lowell without distinction of nationality, color, or religious sect, in such manner and at such times, as may to them seem most urgent and appropriate.

" But, inasmuch as the Missionary Society in this City, having a Chapel and supporting a Ministry at Large, a portion of whose operations embraces the distribution of charitable supplies for like purposes and to like people as are by my said Trustees to be cared for, and also to avoid as far as may be done, imperfect or irregular distribution, it is my wish that my said Trustees shall unite with said Ministry at Large in the distribution of said supplies from said semiannual income, or, annually, commit the said income wholly for the year to said Ministry at Large for distribution, and especially so while the Rev. Horatio Wood, the present minister at large, shall occupy and fill the said office, in said city of Lowell, having great confidence in the present operations of said Ministry at Large in their distribution and having in view, further a distribution as effective as possible and with as little expense as possible. With this expressed wish and suggestions, I do, nevertheless, commit the distribution, whether by the Ministry at Large, or by other persons or organizations, to the careful judgment and determination of my said Trustees and their successors, who shall, at all times and ever, have and be at, the responsibility of a general superintendence and control of said Charity, and its distribution by themselves or others, and the said Trustees and their successors shall require and obtain, semi-annually, from all distributors of said charity

exact accounts of the distribution of said income, and shall preserve the same and shall, themselves, report, annually, to the Mayor of said City of Lowell that they have received the said semi-annual payments of interest and have faithfully disbursed the same according to the Will.

" In case of vacancy, or inability from any cause of any of said Trustees to act, the remaining, or one or more of them, shall report the same to the Supreme Judicial Court of this state, or any Justice thereof, in term time or vacation, and it is the intention of the Testator that said Court or said Justice shall appoint a successor to fill such vacancy upon such notice as shall by said Court or Justice be deemed proper, that the said charity and said Trust may never fail to be wisely and effectively carried out forever.

" And as this fund is devoted to residents in the City of Lowell, I do respectfully request the said City to accept said Twenty-Five thousand Dollars and by all necessary votes & records to promise engage & bind said City & its Inhabitants, to pay said six per cent interest thereon (semi-annually) forever, as is herein set forth. And I do charge my Executors promptly and earnestly to cause the contemplated arrangement to be made with the constituted authorities of said city and thereupon to pay over to the Treasurer thereof said sum of Twenty-five thousand dollars out of any monies or property of my estate.

" And I desire to impress upon my said Trustees and their successors, and upon whoever shall act as dispensers of said income, that the trust be by them faithfully, tenderly, and as privately as may be, performed, through the years to come, forever, according to the design & for the purposes herein set forth, fearing and believing that there will always be found in the city the described objects of this charity."

Pertinent portions of the defendant's answer were as follows:

" The defendant admits . . . that the board of aldermen and common council of the city of Lowell in form attempted to accept the sum of $25,000 as a fund to be held for the purposes named in said will, as appears by the journal of said board of aldermen and the records of said common council

[described in the opinion]. . . . But the defendant says that the said board of aldermen and said common council had no legal power or authority to accept the said sum of $25,000 as a fund to be held for the purposes named in said will, nor to promise and pledge the said city and its inhabitants to pay the trustees named in said will and their successors six per cent interest on said sum at the times and in the manner provided in said bequest. And the defendant says that the said attempted action of the board of aldermen and of the common council is null, void, and of no effect, and that the defendant is not bound, and could not legally be bound, by said board of aldermen and said common council."

The suit was reserved by *Crosby,* J., for determination by the full court upon the pleadings and a stipulation as to facts. Material facts are described in the opinion.

*F. H. Nesmith,* (*A. C. Spalding* with him,) for the relators.

*J. C. Reilly,* (*J. J. O'Sullivan & J. H. Gilbride* with him,) for the defendant.

RUGG, C.J. This is an information by the Attorney General to declare and establish a public charitable trust and to compel the defendant to perform its obligations with respect thereto. By the will of Thomas Nesmith, late of Lowell, a gift of $25,000 was made to the defendant. The avowed purpose of the gift was to devote that sum in charity to aid, encourage and enable better to sustain themselves many struggling people " who linger between competency and poverty — who from accidental misfortune, sickness, failure of employment, or other imperious cause, are temporarily in need of charitable assistance, but are not paupers, and who, by kindly assistance, sympathy and advice, may soon become self-sustaining and self-relyant not intending hereby to countenance or give encouragement to improvidence or idleness." The gift was expressed to be " upon the condition " that before the payment of that sum by his executors to the treasurer of the defendant " the proper and constituted authorities of said City, in a legal manner, shall well and truly and legally resolve and vote and make due record thereof to accept the said sum of money as a fund to be held for the said purposes and shall promise

and shall pledge the said City and the Inhabitants in due form of law, to ever thereafter pay to the Trustees hereinafter named and to their successors, six per cent interest upon the said sum of Twenty-five thousand dollars annually, in semi-annual payments of seven hundred and fifty dollars for each and every half year forever, thereafter, commencing in six months after said Executors shall have paid the said sum of $25,000 to the Treasurer of said City." It further was provided in the will that trustees therein named and their successors should receive said semiannual payments so to be made by the city and " appropriate the same for the charitable assistance as is herein described and to the persons described, being residents of the City of Lowell without distinction of nationality, color, or religious sect, in such manner and at such times, as may to them seem most urgent and appropriate." In December, 1870, the city council of the city of Lowell by both branches in concurrence adopted by unanimous vote a resolution accepting " the bequest of the late Mr. Thomas Nesmith in the interest of the Poor of the City."

The amount of the legacy was duly transferred to the defendant and thereafter interest at the rate of six per cent per annum was paid by it to the trustees under the will in equal semiannual payments of $750 until March 18, 1918. Since that date no payment has been made. The defendant does not now and never has held as a separate fund distinct from its general assets the Nesmith legacy, but apparently soon after its receipt expended it for general corporate purposes. All semiannual payments have been made by the city by annual appropriation presumably out of its tax levy. The officers of the city and the " trustees considered and treated such payments as interest paid under said will." These payments have been expended by the trustees in charity in accordance with the provisions of the will, except possibly a small balance remaining in hand. As matter of bookkeeping the auditor of the defendant has carried this $25,000 as an item of city debt.

The gift under the will was a valid public charity. Foundations for the relief or prevention of poverty are recog-

nized as valid charitable trusts. It is indubitable that the gift under the Nesmith will belonged to this class. *Salton-stall* v. *Sanders*, 11 Allen, 446, 455, *et seq.* *Attorney General* v. *Old South Society in Boston*, 13 Allen, 474, 491. *Norris* v. *Loomis*, 215 Mass. 344. *Bowditch* v. *Attorney General*, 241 Mass. 168, 176. *Sherman* v. *Shaw*, 243 Mass. 257, 259.

The reference in a subsequent clause of the will to this bequest as a sum "loaned to the City of Lowell" falls far short of divesting this clause of its character as creating a public charity.

It is too late now to question the capacity of a city or town to accept a gift for a public charitable trust of the nature here involved and to act as trustee and to execute the trust. *Worcester* v. *Eaton*, 13 Mass. 371. *Drury* v. *Natick*, 10 Allen, 169, 182. *Quincy* v. *Attorney General*, 160 Mass. 431. *Higginson* v. *Turner*, 171 Mass. 586, 591.

There are limitations upon the powers of cities and towns. They are creatures of the Legislature. They are territorial subdivisions of the State created as public corporations. They possess and can exercise only such powers as have been conferred upon them by express enactment or by necessary implication from undoubted prerogatives. They are rigidly restricted as to their faculty to raise and expend money to the purposes specified and through the officers and channels authorized by the law. They cannot transcend the bounds thus imposed. These principles are thoroughly established and are illustrated in numerous decisions dealing with a great diversity of transactions by cities and towns. *Spauld-ing* v. *Lowell*, 23 Pick. 71. *Somerville* v. *Dickerman*, 127 Mass. 272. *Greenough* v. *Wakefield*, 127 Mass. 275. *Wheel-ock* v. *Lowell*, 196 Mass. 220, 223. *Higginson* v. *Treasurer & School House Commissioners of Boston*, 212 Mass. 583, 585. *Whittaker* v. *Salem*, 216 Mass. 483, 485. *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 50. *Chelsea* v. *Treasurer & Receiver General*, 237 Mass. 422, 432. *Ducey* v. *Webster*, 237 Mass. 497.

The defendant made full compliance in respect to form with every condition prescribed by the Nesmith will.

The concurrent resolution of each branch of the city

council of the defendant was acceptance of the bequest " in a legal manner." It bound the defendant so far as under the law it could be bound to the performance of all the provisions of the will. Plainly the defendant was empowered under the general laws in 1871 to accept and execute a charitable trust of a general nature like that established by the Nesmith will.

It is required by the will that this sum of money be accepted " as a fund to be held " forever for the purposes stated. That is a valid requirement which the defendant as well as any other trustee might lawfully perform. There is the further provision that a definite sum each year, amounting to six per cent on the principal of the fund, shall be paid by the city in lieu of income regardless of the amount which the fund might yield properly invested in accordance with the law governing the investment of trust funds. If this provision stood alone and the sum so specified was to be disbursed by officers of the city for the charitable uses designated, it might " not invalidate the gift, nor forfeit the estate upon non-compliance." *Drury* v. *Natick*, 10 Allen, 169, at page 183. This provision is coupled with the further requirement that such payments shall be made to the private individuals who from time to time may be trustees under the Nesmith will. The execution of the trust in this particular is not vested in public officers nor in officers elected, chosen or designated by the defendant or any of its officers, but in individuals holding no municipal office and not responsible to the city but owing responsibility and duty under the law to the court by whom they are appointed.

Doubtless when this fund was paid to the city in 1871 it was possible to invest trust funds in appropriate securities yielding six per cent. It is common knowledge that for some years, at least, before the great war such investments were not available. If the defendant had complied with its duty and kept the gift separate and distinct as a trust fund, $1,500 a year would not continuously have been received from its income. The only way in which the defendant could have made the required payments during such period was out of money raised by taxation. Money

raised by taxation can be devoted only to uses strictly public in nature. It cannot be held to be a public use to pay money over in bulk to private persons named as trustees under a will to be, disbursed to beneficiaries of the class described in the will selected solely by such trustees. The present statutory plan respecting the government of cities and towns shows that public moneys must be disbursed through public officers and not through private agencies. It is apparent from the history of municipal government in this Commonwealth that that has always been the general legislative policy under the Constitution. There is nothing in the statutes which authorizes the defendant to raise by taxation money amounting to six per cent on the fund for payment to the trustees under the Nesmith will. See in this connection *Lowell* v. *Boston*, 111 Mass. 454; *Fiske* v. *Huntington*, 179 Mass. 571; *Opinion of the Justices*, 204 Mass. 607; *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 50; *Opinion of the Justices*, 237 Mass. 598, 609; *Merrick* v. *Amherst*, 12 Allen, 500; *Jenkins* v. *Andover*, 103 Mass. 94.

This element of the trust cannot rightly be held to invalidate its general scheme. The dominant purpose of the testator was to afford assistance to the deserving poor so carefully described by him in the will. The words referring to six per cent interest with its semiannual payments of the named amounts are to be regarded as an estimate of the rate of interest to be expected at that time from conservative investments and a direction that the income should be applied as set forth in the will. The case on this point is governed by *Quincy* v. *Attorney General*, 160 Mass. 431. It was said by Mr. Justice Holmes in the opinion in that case, at page 435, " We are not to assume, without necessity, that the testator either was ignorant of pretty obvious law, or defied it in shaping the conditions of a scheme which he was anxious to have carried out."

The testator did not require by the terms of his will a special act of the Legislature to enable the defendant to accept and execute every detail of his trust. He simply demanded a resolution or vote passed " in a legal manner " accepting the gift, and a promise and pledge of the city in

" due form of law " to pay the interest.  Whatever might be the force and effect of these words in other connections, it is enough to say that in their present context compliance was made with their requirement by the resolution of the city council of the defendant passed with all the formalities of law.  *Bell* v. *Nesmith,* 217 Mass. 254.  It may be that the testator determined to be satisfied with an acceptance of his benefaction through resolutions of the city council of the defendant adopted " in due form of law " and in accordance with the manner commonly recognized as legal, trusting to the honor of the inhabitants and officers of the defendant to secure appropriate legislation, so far as necessary and constitutional, to enable the details of his plan to be carried out.  Intention to create vital conditions likely to prevent the vesting and execution of the trust are not lightly to be inferred but must clearly appear from the words of the instrument creating the trust.  Every gift dictated by a benevolent purpose for the accomplishment of an undoubted charity is to be construed liberally and upheld if possible rather than declared void.  *Thorp* v. *Lund,* 227 Mass. 474, 477, and cases there collected.  *Eustace* v. *Dickey,* 240 Mass. 55, 75.

If the portion of the will as to payment of interest in semiannual instalments be regarded as in form a condition, then, so far as it undertook to impose obligations upon the city for the future which it could not by law assume, it would be repugnant to the paramount and overbalancing testamentary design to establish the charity and would yield to that supreme overruling purpose.

For reasons already stated the case at bar is distinguishable from cases like *Bullard* v. *Shirley,* 153 Mass. 559, and *Teele* v. *Bishop of Derry,* 168 Mass. 341.

The result is that the trust was accepted by the defendant. Being for a charitable purpose, it cannot afterwards be renounced or abandoned so as to defeat the charity.  *Drury* v. *Natick,* 10 Allen, at page 183.  It was a plain violation of the defendant's obligation under the trust to spend the principal for any purpose.  The defendant ought to have kept this bequest separate and apart as a distinct fund.

Its breach of trust in this particular does not affect the present validity of the trust nor the instant duty of the defendant with respect to it.    Like any other trustee, the defendant must make good its previous default in management and restore the fund to its full amount.    A municipality, being authorized by law to act as trustee of a charitable trust, must be held to the performance of the obligations of a trustee.    *Brigham* v. *Morgan,* 185 Mass. 27, 44.    *Kimball* v. *Whitney,* 233 Mass. 321.    In this respect cases like *Agawam National Bank* v. *South Hadley,* 128 Mass. 503; *Brown* v. *Newburyport,* 209 Mass. 259; *Franklin Savings Bank* v. *Framingham,* 212 Mass. 92, and *Simpson* v. *Marlborough,* 236 Mass. 210, are not pertinent.

The principal of the trust fund must be restored in full by the defendant.    The defendant must also pay to the trustees under the Nesmith will interest on the principal of the fund from March 18, 1918, until the time when the principal of the trust fund shall be restored in full at the rate which shall be found by the single justice to be the rate fairly earned by trust investments during that period.    When the principal of the trust fund has been restored in full, it must be invested by the defendant in securities appropriate for trust funds and the income received paid over semiannually to the trustees under the Nesmith will.    The details are to be fixed by a single justice.

*Ordered accordingly.*