TRUSTEES OF DARTMOUTH COLLEGE *vs.* CITY OF QUINCY & another.

Norfolk. November 5, 1953. — March 10, 1954.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Trust*, Charitable trust, Principal and income, Use of principal. *Equity Pleading and Practice*, Motion to dismiss, Plea, Parties, Proceeding to enforce charitable trust, Declaratory proceeding, Decree.

A so called motion to dismiss a suit in equity for want of jurisdiction was an irregular pleading which was treated as a plea. [225]

By reason of provisions of a will that, in case a municipality to which was given property upon a public charitable trust should fail to observe the terms of the will respecting such trust, a designated college should take the property, the college had a special interest in the preservation of the trust fund and had a standing to maintain a proceeding for determination of the questions whether certain accumulated income had become a part of the principal and whether an ex-

cess of current expenses in the operation of the charity over current income had been properly charged to principal.  [225]

Under a will giving property to a municipality and providing that the proceeds of sales thereof, "together with the rents and profits and income . . . [should] be kept as a perpetual fund" and that "whenever the income . . . [should] be sufficient . . . or at least within" twenty-five years after the testator's death, the municipality should "establish and continue" a certain kind of educational institution, only one fund was contemplated and income accumulated during the period between the testator's death and the establishment of the institution became part of the principal of such "perpetual fund." [225–226]

A municipality holding a "perpetual fund" upon a charitable trust for the establishment and conducting of an educational institution improperly charged to the principal of the fund an excess of current expenditures in the operation of the institution over current income, and must restore the amount of such excess with interest to the fund. [227]

A decree providing that a municipality holding a fund upon a public charitable trust "owes to said fund" expenditures improperly charged to the principal thereof should be modified so as to provide that the municipality be ordered to pay to itself as trustee the amount so owed. [227–228]


PETITION, filed in the Probate Court for the county of Norfolk on January 15, 1952.

The case was heard by *Reynolds, J.*

*James A. Mulhall,* (*Gabriel V. Mottla* with him,) for the respondent city of Quincy.

*John B. Dolan,* (*F. William Andres* with him,) for the petitioner.

WILLIAMS, J.  This is a petition by Trustees of Dartmouth College, a corporation, for a declaratory decree as to the rights and obligations of the city of Quincy in its administration as trustee of a certain charitable trust.  G. L. (Ter. Ed.) c. 231A.  It is not disputed that an actual controversy exists between the parties arising from the facts which are herein summarized.

One Ebenezer Woodward died in 1869.  By the fifth clause of his will he devised certain parcels of real estate in Quincy and several of his church pews to the town of Quincy "as a Fund . . . to be disposed of or kept as the town may think proper: the sales, together with the rents and profits

and income from whatever source obtained, to be kept as a perpetual fund, guaranteed by the town with six per cent interest forever, for the purposes to be hereinafter mentioned, viz: —

"1. Whenever the income from the foregoing bequests shall be sufficient, in the opinion of the managers of said fund, or at least within twenty-five (25) years after my decease, they shall establish and continue for the town of Quincy forever a Female Institute for the education of females, from the age of ten to twenty years, who are native born, born, I wish it to be understood, in the town of Quincy, and none other than these, to be allowed to attend this Institute which I wish to be as perfect and as well conducted as any other in the state.

"2. The property which I bequeath to the town of Quincy for this purpose, is to be perpetually managed by the Selectmen of said town, together with the Clerk and Treasurer of Quincy for the best advantage of said town and said Institute.

"3. Whenever the town of Quincy becomes a City [which occurred in 1888], then the government of said city to have the management of said property for the benefit of said city to be used according to the directions of this will and for the purposes herein mentioned.

"4. I would recommend that the said town or city, as the case may be, should choose a committee from time to time, to confer with the above named officers, concerning the best mode of managing said property and to see that it is not wasted or lost.

"5. The management of said Institute or School so far as the selection of instructors and the studies to be pursued and all internal regulations, to be and to remain under the direction of the following gentlemen forever viz: —

"The several ordained and settled ministers of the town or city, as may be, and all settled ministers to be added to this committee, from time to time, as they become residents of Quincy, I mean the Catholic as well as the Protestants and all who are settled for one or more years and reside

in the town of Quincy. I wish no sectarianism taught in the Institute, leaving that to parents and the pastors of their choice. . . .

"6. I wish all the ornamental as well as useful branches of learning taught in this Institute or school, which are taught in any other similar Institute in the State."

In subparagraph 8 of the fifth clause of the will the testator directed that rent from a parcel of land, which apparently was not devised to the town, was for a period of ten years to be paid to the town "as a fund for the Female Institute."

In the sixth clause of his will he provided that "If the town of Quincy refuses to accept the above property upon the terms herein specified, or fail to comply with the words and intent of this will, as determined by good judges, or should surrender the property or use it for any other purpose than contemplated in this will, then I bequeath the said property to the Trustees of Dartmouth College to be used by them, in the manner they may think best, for the promotion of science and literature."

The widow of the testator, Mary Ann Wroe Woodward, died in 1870. In pursuance of a wish expressed in her husband's will she devised the residue of her property, subject to certain life interests, to the town "upon the same trusts and for the same purposes as are set forth in the will of my late husband . . . touching the foundation and maintenance of a Female Institution in the town of Quincy."

The town of Quincy accepted this trust. On or about February 18, 1870, it received from the estate of Ebenezer Woodward personal property in the form of cash and securities, amounting to $30,089.83. It also acquired title to three parcels of real estate which were referred to in the will and three pews. Subsequently a part of this real estate was sold for $81,765.16, the pews were sold for $120, and $25,243 was realized from one of the parcels which was taken by eminent domain.

The trustee received from the estate of Mary Ann Wroe Woodward cash and securities amounting to $51,556.78 and

an interest in a store valued at $12,000. The property received from Mrs. Woodward's estate was added to that received from her husband and the whole managed, invested, and reinvested as one fund. The income from this fund as it accumulated was kept on the books of the trustee in a particular account. In 1894 it amounted to $148,356.05. In that year the construction of the first building of the institute was completed. Construction of the entire institute was completed in 1900. Its cost was charged to the accumulated income account which, after such charge, stood in 1900 at $90,123.91. In 1903, due to accretion in the value of securities in which it was invested, it amounted to $108,308.57. After 1894, items of receipts and disbursements of current income were entered in a separate account.

The balance of $108,308.57 in the accumulated income account remained constant on the books of the trustee until 1923 when for convenience in bookkeeping the entire fund, consisting of the original principal and the accumulated income, was consolidated in one account termed "general fund." The gains and losses credited or charged to the general fund were after 1923 prorated on the books between the original principal account and the accumulated income account in the proportions that these accounts bore to each other at the time of consolidation. Considered separately the accumulated income showed a balance of $103,687.84 on December 31, 1945, the end of the 1945 accounting year. After 1894, when the current income account was established, any surplus of income over expenditures for a particular year was held in the account as a reserve and used in subsequent years to take care of income deficits as they occurred. Until 1946 this reserve was sufficient to meet any annual deficits in income. In 1946 the year's operation of the institute resulted in a deficit of $2,161.05, and the reserve of unexpended income was only $898.24. After applying that reserve the net deficit for the year was $1,262.81. This sum was charged to the general fund. In 1947 expenditures were $23,835.68 and income $21,403.38. The deficit of $2,432.30 was again charged to the general

fund. In 1948 expenditures were $28,318.20 and income $24,736.55. The deficit of $3,581.65 was charged to the fund. In 1949 the petitioner brought to the attention of the city officials their objection to the city's method of accounting. During that year expenditures were $27,639.54 and income $23,252.67. Presumably because of the petitioner's criticism the city charged the deficit for 1949 to accumulated income. In 1950 income was $23,688.01 and the deficit charged to accumulated income $4,668.11. In 1951 with income of $25,699.69 the deficit so charged was $5,441.38. As of December 31, 1951, the total income deficits which had been charged to the general fund or to accumulated income amounted to $21,773.12.

In its petition the petitioner seeks a determination of the present "status" of the income accumulated by the city from the establishment of the trust until the construction of the institute, a declaration as to whether this income became a part of the principal of the fund and, if it did, a declaration as to whether it may be used for the payment of expenses ordinarily chargeable to income. The Attorney General was joined as a party. In his answer he submitted "his rights in the premises to the determination" of the court. The city filed a motion to dismiss and a demurrer. The motion was based on alleged "want of jurisdiction" and failure of the petitioner to comply with G. L. (Ter. Ed.) c. 214, § 3 (11). The motion was denied and the demurrer overruled by interlocutory decrees and a trial on the merits held on November 24, 1952. A final decree was entered on the following December 26, by which it was declared that:

1. The income on the property left to the city by Ebenezer Woodward and his wife which had accumulated prior to the establishment of the Woodward Institute in 1894 "became a part of the principal of the fund."

2. The principal of the fund "cannot be used for the payment of deficits that may occur in any year as a result of income expenses being in excess of income receipts, or for the payment of any expense which is properly chargeable to income."

3. The deficits in income from 1946 through 1951 have been improperly charged to the principal of the fund and the city "owes to said fund" the total amount so charged with interest at 4% on the respective amounts from December 31 of each year in which the charge was made.

4. The matter of counsel fees and expenses is reserved.

From this decree the city of Quincy appealed. Its appeal also brings before us the correctness of the interlocutory decrees.

As a motion to dismiss is a pleading unknown in equity (*E. S. Parks Shellac Co.* v. *Jones*, 265 Mass. 108, 110) we treat the motion as a plea intended to raise the issue which is alleged as ground for the demurrer, namely, the right of the petitioner to bring this petition. There can be no doubt that this is a charitable trust established for the benefit of the public. It is ordinarily the exclusive function of the Attorney General to see that such a trust is properly administered. G. L. (Ter. Ed.) c. 12, § 8. *Dillaway* v. *Burton*, 256 Mass. 568. Restatement: Trusts, §§ 391, 392. In *Dillaway* v. *Burton*, *supra*, it was held that trustees of a charitable trust cannot be called to answer in proceedings initiated by "citizens of a municipality having no peculiar and immediate interests distinct from those of the public" (page 574). But here the petitioner has a special interest in the maintenance of the fund, to which it will be entitled on the happening of the contingency stated in the will. It is noted that it has heretofore been permitted to appear before this court as a party having an interest in this trust. See *Quincy* v. *Attorney General*, 160 Mass. 431. In that case it was joined as a party respondent to a petition by the trustee for instructions and presented a claim that it was then entitled to the trust property for the reason that the city had violated the conditions of the trust. We think that it has a right to its present petition and that there was no error in the interlocutory decrees.

Referring to the subject matter of the petition we think that the income from the property left to the town which

had accumulated prior to 1894 became a part of the principal of the trust. It is evident that the testator had in mind only one fund. The fund was intended to consist at first of the property which he had devised and the proceeds from the sale of such property. Thereafter it was to be increased by the addition of rents, profits, and income and after it had reached an amount sufficient to establish and maintain the kind of school which the testator contemplated was to be "kept as a perpetual fund." See *Old Colony Trust Co.* v. *Forsyth Dental Infirmary for Children,* 271 Mass. 511, 514. That the will provides for but one fund was substantially held by this court in *Quincy* v. *Attorney General,* 160 'Mass. 431, 434. In construing the clause in the will relating to the guaranty of 6% interest it was said, "the fund which is to be guaranteed is not the fund first mentioned in the words of gift, consisting of real estate and pews . . . but is to be made up from sales, rents, profits, and income. So long as the original real estate is kept, there is no need of a guaranty of that, and none is required. The requirement, therefore, plainly is a condition subsequent, as the town could have no such fund until it had received and held the gift for some time." We think that as income was received it became a part of the fund. In 1894, when a period of twenty-five years from the testator's death had expired, the original fund with the additions or accumulations of income became the established corpus of the trust which was to be held and administered according to the expressed intention of the testator. It was the duty of the trustee to account for it as principal.

Regardless of the method of bookkeeping adopted by the trustee, the fund has remained principal although diminished in amount as a source of income by appropriation from it of the money necessary for the construction of buildings and for permanent improvements. Although the trustee has incorrectly continued to account for the income accumulated before 1894 as an item distinct from the balance of the fund, no harm has resulted because the fund has been invested and reinvested as a whole.

Trustees of Dartmouth College *v.* Quincy.

The trustee was not empowered by the will or by order of court to use any part of the fund for current expenses. The regular annual or periodical expenses arising in the administration of a productive trust commonly are paid out of the income. *Cogswell* v. *Weston*, 228 Mass. 219, 222. *Creed* v. *McAleer*, 275 Mass. 353, 358–359. See *Harvard Trust Co.* v. *Duke*, 304 Mass. 414, 416–417. The fund was intended to be kept in perpetuity. Every charge to principal reduces its amount and therefore its capacity to produce income. If the trustee were permitted to charge it with expenditures ordinarily chargeable to income, ultimately the trust would be destroyed. *Dumaine* v. *Dumaine*, 301 Mass. 214, 222. It is plain that charging the deficits in the years 1946 to 1951, inclusive, to principal was improper and constituted a violation of the trustee's obligation to keep the fund intact. The fund must be restored to its full amount. *Attorney General* v. *Lowell*, 246 Mass. 312, 323–324. The judge correctly found that the trustee owes to the fund the amount of the withdrawals with interest. The finding was within the scope of the petition in which a determination was asked as to the status of the accumulated income of the trust. It was also a matter appropriate for consideration under the implied prayer for general relief. *Bleck* v. *East Boston Co.* 302 Mass. 127, 130. The 4% rate of interest was apparently fixed by the judge as being the rate of return which would have been received on the investment of the principal which had been withdrawn. See *Attorney General* v. *Old South Society in Boston*, 13 Allen, 474, 496; *Edwards* v. *Edwards*, 183 Mass. 581, 585–586; *Loring* v. *Thompson*, 184 Mass. 103, 105–106; *McInnes* v. *Whitman*, 313 Mass. 19, 30; Restatement: Trusts, § 207.

There were no errors in the interlocutory decrees. The final decree which declared that the accumulated income became a part of the principal of the fund; that the principal of the fund cannot be used for the payment of expenses which are properly chargeable to income; and that the city of Quincy owes to the fund the amounts withdrawn from principal with interest, should be modified by pro-

viding that the city be ordered to pay to itself as trustee the amounts which the judge has found that it owes. The decree purports to be a final decree and as such should settle the rights and obligations of the parties and leave nothing for future determination. See *Fairbanks* v. *Mc-Donald*, 219 Mass. 291, 298; *Kingsley* v. *Fall River*, 280 Mass. 395; *Malloy* v. *Carroll*, 287 Mass. 376, 390–391; *New England Factors, Inc.* v. *Genstil*, 322 Mass. 36, 45–46. It should also provide for the payment of the costs and expenses of this appeal to the petitioner. The interlocutory decrees and the final decree as so modified are affirmed.

*So ordered.*